# 160

548 P.2d 440

**Lucille EALEY, d/b/a T & L Ceramics,
Respondent-Appellant,**

v.

**BUREAU OF REVENUE of the State of
New Mexico, Petitioner-Appellee.**

**No. 10738.**

Supreme Court of New Mexico.

March 22, 1976.

———◆———

Toney Anaya, Atty. Gen., Vernon O. Henning, Asst. Atty. Gen., Bureau of Revenue, Santa Fe, for petitioner-appellee.

Byron Caton, Caton & Haynes, Farmington, for respondent-appellant.

## OPINION

McMANUS, Justice.

This case began in the form of an informal protest made on July 23, 1974 by the appellant of a denial of a claim for refund of taxes assessed against taxpayer on gross receipts derived from the transmission of interstate telegraphic messages. A formal hearing was held on March 14, 1975 on the same challenge by appellant. The Bureau then denied appellant's request for a refund of gross receipts taxes paid to the State of New Mexico. In its decision the Court of Appeals in a two-to-one decision, with three separate opinions, concluded the issue in favor of the taxpayer. *Ealey v. Bureau of Revenue*, 89 N.M. 174, 548 P.2d 454 (Ct.App.1976). The petition for writ of certiorari filed by the Attorney General on behalf of the Bureau of Revenue raised the theory that all of the opinions of the Court of Appeals in this one case would support affirmance of the Bureau's actions and that there is no majority opinion which could support reversal based on the legal and factual issues raised. Furthermore, the Court of Appeals did not make clear whether appellant's transmission of purely intrastate messages constitutes a taxable local incident or not. Because these and other questions were raised, we feel it our obligation to clarify the matter.

Appellant Ealey is an agent for Western Union Telegraph Company in Farmington, New Mexico. She transmits messages for Western Union both interstate and intrastate. As compensation for this she is paid seventy cents (70¢) per message or money order which she sends or receives.

Interstate messages sent or received by her are relayed through the Western Union office in Albuquerque. It is unclear from the appellant's testimony just exactly how the message she sends is transferred onto the national wires, but it is clear that the process is nearly automatic. In other words, for all practical purposes, the messages sent by the appellant enter the stream of interstate commerce when she types them onto her teleprinter.

The Bureau in its decision and order found that the appellant is obligated to pay New Mexico gross receipts tax since she performs services in New Mexico. Upon.

appeal to the Court of Appeals, Judges Hernandez and Sutin found that the income from her activities falls within the definition of "gross receipts" in § 72–16A–3(F), N.M.S.A.1953 (Supp.1975), but Judges Sutin and Wood denied the applicability of the deduction found in § 72–16A–14.10, N.M.S.A.1953 (Supp.1975) to appellant's case.

These statutes are set out as follows, § 72–16A–3(F) providing:

> "As used in the Gross Receipts and Compensating Tax Act [72–16A–1 to 72–16A–19]:
>
> * * *
>
> "F. 'gross receipts' means the total amount of money or the value of other consideration, received from selling property in New Mexico, from leasing property employed in New Mexico or from performing services in New Mexico, * * *."

Section 72–16A–14.10, supra, provides:

> "Receipts from transactions in interstate commerce may be deducted from gross receipts to the extent that the imposition of the gross receipts tax would be unlawful under the United States Constitution.
>
> "Receipts from transmitting messages or conversations by telegraph, telephone or radio other than from one point in this state to another point in this state may be deducted from gross receipts."

An important resolution to make at this point is whether or not the appellant falls within the provisions of § 72–16A–14.10, supra. The statute neither denies its coverage to the appellant in specific terms nor does it grant her coverage in specific terms. However, in unequivocal language the words "receipts from transmitting messages" describe the appellant's position. In addition, she is an agent of Western Union and not an independent contractor. Her activities are vital to the only purpose involved, i. e., the transmission of messages, both interstate and intrastate. The language of § 72–16A–14.10, supra, appears to

us to be clear and unambiguous and is applicable to the appellant insofar as she transmits interstate messages. We so hold.

Judge Hernandez in his Court of Appeals opinion correctly states that the appellant's taxpayer position is readily distinguishable from that of the taxpayer in *Spillers v. Commissioner of Revenue*, 82 N.M. 41, 475 P.2d 41 (Ct.App.), cert. denied, 82 N.M. 81, 475 P.2d 778 (1970). There, the taxpayer, Spillers, acted as a resident agent for Bekins Van Lines, an interstate carrier of household goods. He received a commission for "booking" the transportation of such goods. The New Mexico Court of Appeals held that the Commissioner of Revenue could impose a gross receipts tax on this commission, since Spillers only made the order for the transportation of such goods, while Bekins actually transported them. This "booking" constituted a separate, taxable local activity.

In the case before us, the appellant does more than simply "book" the transaction, she actually transmits the message from her office in Farmington, New Mexico. As stated in the Court of Appeals opinion of Judge Hernandez:

> "Once a telegram is transmitted bound for an interstate destination it becomes part of the national network of telegraphic communications. Each separate mode of relay or transmission cannot be isolated and taxed as a local incident."

As a result, then, the appellant is allowed to deduct from her gross receipts the amounts obtained from messages transmitted by her to ultimate points of destination outside of New Mexico.

While we have been unable to find a case which discusses the exact question before us, we have found several cases which lead us to conclude that we are correct in viewing appellant's activities as interstate commerce when she transmits a message bound for another state.

In *Western Union Tel. Co. v. Foster*, 247 U.S. 105, 38 S.Ct. 438, 62 L.Ed. 1006

(1918), the New York Stock Exchange agreed to furnish to certain telegraph companies quotations of prices made in transactions upon the Exchange. The quotations, which were furnished in New York, were then telegraphed to Boston where they were translated from Morse code into English, and then transmitted by an operator to the tickers in the offices of those brokers who had subscribed to the service and had been approved by the Exchange. Foster applied for such service to the various telegraph companies involved, but his application was disapproved by the Exchange. As a result, the Public Service Commission of Massachusetts issued an order declaring the refusal by the telegraph companies to supply to Foster the ticker service an unlawful discrimination. The order required the telegraph companies to remove the discrimination and supply Foster with the service. Mr. Justice Holmes, writing for the U.S. Supreme Court, reasoned that the quotations were interstate commerce when they were transmitted from New York to Massachusetts, and remained interstate commerce until they reached "the point where the parties originally intended that the movement should finally end." Since the quotations were interstate commerce, the order by the Public Service Commission was an unconstitutional interference by a state, and was therefore void.

*Price v. Western Union Tel. Co.*, 156 Fla. 406, 23 So.2d 491 (1945), involved a telegram sent from Arkansas to Florida by the appellant's brother. The telegram reached Jacksonville, Florida but was then not relayed to the appellant in Ocoee, Florida. Appellant sought to recover for the telegraph company's failure of its duty to deliver. Under Florida law if the relay was intrastate the appellant could recover; if it was considered interstate, he could not. The court held that, "the sending of a telegraph message from one state into another is a transaction in interstate commerce and the transmission is an indivisible movement from the time of receipt of the telegram from the sender to final delivery to the addressee."

In *Western Union Telegraph Co. v. King*, 61 Ga.App. 537, 6 S.E.2d 368 (1939), H. S. King sued the Western Union Telegraph Company for nominal damages for the failure to deliver a telegram deposited with it at Rome, Georgia, addressed to his daughter in Milwaukee, Wisconsin. The court held (1) that the transaction was one involving interstate commerce even though the telegram was not transmitted across state lines; (2) that Congress has so far occupied the entire field of interstate business of telegraph companies as to exclude state action on the subjects not expressly excepted, and (3) that the federal common law rule regarding the amount of nominal damages should prevail over the Georgia rule of nominal damages.

The order and decision of the Bureau of Revenue is reversed. The case is returned to that body for the purpose of defining what percentage of the gross receipts is derived from interstate commerce, and what is derived from intrastate, and levying the tax on the intrastate portion.

IT IS SO ORDERED.

.OMAN, C. J., and STEPHENSON, MONTOYA and SOSA, JJ.