MCI TELECOMMUNICATIONS CORPORATION v DEPARTMENT
OF TREASURY

Docket No. 64790. Submitted June 14, 1983, at Detroit.—Decided May
15, 1984.

The Department of Treasury assessed MCI Telecommunications
Corporation a use tax on its purchase of local exchange service
from Michigan Bell Telephone Company. MCI petitioned the
Tax Tribunal concerning the assessment and the Tax Tribunal
held that MCI was liable for the tax. MCI appealed. *Held:*

1. Review of Tax Tribunal decisions involving application of
the use tax shall include the determination whether they are
authorized by law and, in cases where a hearing is required,
whether they are supported by competent, material and sub-
stantial evidence on the whole record.

2. The purchase by a long distance telephone company of
local exchange service from a company empowered to do busi-
ness only in Michigan is properly subject to the use tax and
does not violate the commerce or Supremacy Clauses of the
United States Constitution. A business may be both interstate
and intrastate in character. The tribunal's decision is supported
by competent, material and substantial evidence.

3. The Department of Treasury's failure to tax AT&T's
similar purchases from Michigan Bell was not shown to be
knowing and intentional. It is not a denial of equal protection
to a use tax taxpayer for the state to fail to tax similarly
situated enterprises where the failure was mistaken or the
result of inadvertence rather than intentional and knowing.

Affirmed.

T. M. Burns, J., dissented. He would hold that, since Michi-

REFERENCES FOR POINTS IN HEADNOTES
[1] 68 Am Jur 2d, Sales and Use Taxes § 240.
[2] 71 Am Jur 2d, State and Local Taxation § 250.
[3, 5] 68 Am Jur 2d, Sales and Use Taxes § 171 *et seq.*
    71 Am Jur 2d, State and Local Taxation § 416 *et seq.*
[4] 16A Am Jur 2d, Constitutional Law § 780.
    68 Am Jur 2d, Sales and Use Taxes § 192.
    71 Am Jur 2d, State and Local Taxation § 150 *et seq.*

gan Bell's local exchange becomes a part of an interstate communication system when interconnected with MCI's microwave relay system, the use tax is inapplicable to MCI's purchase of local exchange service. He would hold that application of the use tax would unduly burden interstate communications, which, he believed, deserves higher protection than the interstate transportation of goods. He also believed that the imposition of the tax on MCI and not on AT&T resulted in a violation of the Equal Protection Clause. He would reverse.

#### OPINION OF THE COURT

1. TAXATION — APPEAL — USE TAX — CONSTITUTIONAL LAW.

 Review of Tax Tribunal decisions involving application of the use tax shall include the determination whether they are authorized by law and, in cases where a hearing is required, whether they are supported by competent, material and substantial evidence on the whole record (Const 1963, art 6, § 28).

2. TAXATION — COMMERCE — INTRASTATE COMMERCE — INTERSTATE COMMERCE.

 A business may be both interstate and intrastate in character.

3. TAXATION — CONSTITUTIONAL LAW — USE TAX — TELECOMMUNICATIONS.

 The purchase by a long distance telephone company of local exchange service from a company empowered to do business only in Michigan is properly subject to the use tax and does not violate the Commerce or Supremacy Clauses of the United States Constitution (US Const, art 1, § 8, art 6, § 2).

4. TAXATION — EQUAL PROTECTION — USE TAX.

 It is not a denial of equal protection to a use tax taxpayer for the state to fail to tax similarly situated enterprises where the failure was mistaken or the result of inadvertence rather than intentional and knowing.

#### DISSENT BY T. M. BURNS, J.

5. TAXATION — USE TAX — TELECOMMUNICATIONS.

 *The purchase by a long distance telephone company of local exchange service from a company empowered to do business in Michigan for use in completing interstate telephone calls is not subject to the Michigan use tax.*

*Fischer, Franklin, Ford, Simon & Hogg* (by

*Thomas F. Sweeney* and *Philip E. Chaffee),* for MCI Telecommunications Corporation.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Richard R. Roesch* and *Ross H. Bishop,* Assistants Attorney General, for The Department of Treasury.

Before: BRONSON, P.J., and T. M. BURNS and H. E. DEMING,* JJ.

PER CURIAM. Petitioner appeals as of right from the Tax Tribunal's order declaring it liable for $81,470.89 in back taxes under the use tax act, MCL 205.91 *et seq.;* MSA 7.555(1) *et seq.* We find no error and affirm.

We first note the standard for reviewing Tax Tribunal decisions involving application of the use tax. The use tax is not a property tax, *Banner Laundering Co v State Bd of Tax Administration,* 297 Mich 419, 427; 298 NW 73 (1941). Accordingly, the present case is not governed by the standard of review set forth in the last sentence of Const 1963, art 6, § 28, which applies solely to cases involving application of the property tax. Instead, the more general provisions of Const 1963, art 6, § 28 apply, as follows:

"[R]eview shall include * * * the determination whether * * * final decisions * * * are authorized by law; and, in cases where a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record."

Applying the foregoing standard of review, we find that the tribunal's decision must be upheld, as

* Circuit judge, sitting on the Court of Appeals by assignment.

it is supported by competent, material and substantial evidence.

What petitioner challenges on appeal is the tribunal's finding that petitioner's purchases of exchange services from Michigan Bell are "intrastate" within the meaning of MCL 205.93a; MSA 7.555(3a). This finding was based upon evidence of record indicating that the service which petitioner purchases is necessarily located and delivered solely in Michigan.

A schematic diagram submitted by petitioner at the hearing reveals the essentially local character of the exchange services. The diagram shows that petitioner's intercity network is distinct from the local exchange facility which transmits messages to and from local subscribers. A message (or more precisely, the electronic impulse which carries any message) passes over Michigan Bell's lines—lines which are necessarily located within this state[1]— before petitioner ever takes control or dominion over the message. Similarly, the message passes through a local exchange facility before entering petitioner's interstate network.

Petitioner makes much of the fact that it does operate an interstate network and that even its Michigan customers making calls within this state depend upon certain out-of-state elements of that network in order to complete their calls. From this fact, petitioner reasons that it provides an interstate communication service and that, when it purchased certain exchange services from Michigan Bell, petitioner was merely purchasing an integral part of the interstate communication service which it provides to its customers. We believe

[1] Since Michigan Bell is a company which is licensed to operate solely in Michigan, any access or exchange services which it provides are performed solely within this state.

that petitioner's argument overlooks the crucial distinction between the service which it provides to its own customers and that which it has purchased from Michigan Bell. Respondent does not propose to tax revenue from interstate calls made by petitioner's Michigan customers. Instead, respondent proposed only to tax the amounts which petitioner has paid to Michigan Bell in order to facilitate its customers' calls. The fact that its customers make calls using parts of the interstate network does not change the fact that petitioner has purchased an exchange service which was in all respects provided and located in Michigan.

In urging that its interstate network must be treated as inseparable from Michigan Bell's local exchange services, petitioner misplaces reliance upon several federal cases, *United States v Southwestern Cable Co,* 392 US 157; 88 S Ct 1994; 20 L Ed 2d 1001 (1968); *Ward v Northern Ohio Telephone Co,* 300 F2d 816 (CA 6, 1962), *cert den* 371 US 820; 83 S Ct 37; 9 L Ed 2d 61 (1962); *Idaho Microwave, Inc v Federal Communications Comm,* 122 US App DC 253; 352 F2d 729 (1965). These cases held only that companies which limit their services to a single state are still part of an interstate broadcasting or communications industry and are thus still subject to FCC regulation. The cases do not hold that such companies are providing only interstate services, nor do they preclude the possibility that such companies could also be providing certain *intrastate* services which might be appropriate subjects of state regulation or taxation. See *Ward, supra.* Michigan courts have long recognized that a business can be both interstate and intrastate in character, *J B Simpson, Inc v State Bd of Tax Administration,* 297 Mich 403, 409; 298 NW 81 (1941). Similarly, the

United States Supreme Court had identified a separate intrastate aspect or phase of an otherwise interstate industry or activity, *United Air Lines v Mahin,* 410 US 623; 93 S Ct 1186; 35 L Ed 2d 545 (1973); *Complete Auto Transit, Inc v Brady,* 430 US 274; 97 S Ct 1076; 51 L Ed 2d 326 (1977). Accord, *Bob-Lo Co v Dep't of Treasury,* 112 Mich App 231, 239-242; 315 NW2d 902 (1982). In the present case, the local exchange services which plaintiff purchased constitute an activity which is intrastate in character even though petitioner in turn provides interstate services to its customers. We conclude that the Tax Tribunal acted properly in characterizing Michigan Bell's exchange services as a taxable intrastate aspect of petitioner's business.

Petitioner next urges that the tax on petitioner's use of local lines violates the Commerce Clause, United States Const, art 1, § 8. In order for a tax to be constitutional, the following four factors must be present: (1) the taxed activity must have a substantial nexus to the taxing state; (2) the tax must be fairly apportioned; (3) the tax must not discriminate against interstate commerce; and (4) it must be fairly related to services provided by the state. *Complete Auto Transit, Inc v Brady, supra,* pp 277-287. Petitioner does not contend that the tax is unfairly apportioned or that it is not fairly related to services provided by this state. Instead, petitioner focuses upon the first and third factors, *supra,* urging that each is absent and that, as a result, the tax violates the Commerce Clause. We disagree.

The tax does have a sufficient nexus to Michigan, since it is applied to local exchange services provided by a corporation which can operate only in Michigan. As in *Complete Auto Transit, supra,*

the intrastate link or aspect in the taxed company's interstate network is identifiable and a proper subject of state taxation. Petitioner's assertions to the contrary, there is a taxable event or transaction which takes place in Michigan. Petitioner has to purchase access to Michigan Bell's local communications network in order to complete the transmission of its messages. The point of access or transfer necessarily takes place within Michigan; petitioner's own network reaches into this state to meet that of Michigan Bell at that point of access. Contrast *Michigan Wisconsin Pipe Line Co v Michigan,* 58 Mich App 318; 227 NW2d 334 (1975), relied on by petitioner, where the gas in question never left the taxpayer's own pipeline. There was no transaction between the taxpayer and any other company, and the taxpayer neither purchased nor consumed any Michigan company's services.

The taxpayer in *Michigan Wisconsin Pipe Line Co* was merely using its pipelines to pass its product through Michigan, without any taxable exchange of goods or services. The present case does involve an identifiable exchange of services within Michigan borders and involves no attempt to tax petitioner for merely passing its message through this state. *Cf. Helson v Kentucky,* 279 US 245; 49 S Ct 279; 73 L Ed 683 (1929), *Michigan Wisconsin Pipe Line Co, supra.* The Supreme Court has upheld tolls for the use of facilities located within one state, even where those facilities form a link in a network of interstate commerce. *United Air Lines, supra; Evansville-Vanderburgh Airport Authority Dist v Delta Airlines, Inc,* 405 US 707; 92 S Ct 1349; 31 L Ed 2d 620 (1972). Users of facilities in the taxing state may properly be required to pay their fair share of the cost of providing, main-

taining and protecting those facilities. *United Air Lines, supra,* p 630, fn 7.

The use tax in the present case does not require petitioner to pay anything more than its nondiscriminatory share of Michigan's cost in protecting or maintaining Michigan Bell's local exchange service facilities. Accordingly, there is no merit to petitioner's alternative claim that it faces the possibility of multiple, discriminatory taxation. The tax is solely upon the privilege of consuming services provided within Michigan; there is no possibility that the tax can be duplicated by another state. Any other state's taxation of exchange services would be limited to amounts spent on separate exchange services provided within that other state. There is no showing of any attempt by other states to tax services which plaintiff purchased and received in Michigan. In short, there has been no showing that Michigan's tax, when combined with that of other states, would result in multiple taxation of the activity in question, namely, the local exchange services provided to plaintiff by Michigan Bell.

Petitioner next urges that the use tax would interfere with federal regulation of interstate communications, in violation of the Supremacy Clause, US Const, art 6, § 2. We find no merit in this argument. Petitioner has failed to meet its burden of showing how local taxation actually interferes with any federal agency's regulations. The cases cited by petitioner, *Maryland v Louisiana,* 451 US 725; 101 S Ct 2114; 68 L Ed 2d 576 (1981), and *Northern Natural Gas Co v Kansas State Corporation Comm,* 372 US 84; 83 S Ct 646; 9 L Ed 2d 601 (1963), are distinguishable; each tax statute contained specific directives which purported to require a federal agency to allocate costs in a certain

manner. Taxes on interstate commerce are only found void as inconsistent with federal regulation where the taxes are linked to specific regulatory directives which would demonstrably impede congressional objectives. See, for example, *Bell Telephone Co of Pennsylvania v Federal Communications Comm,* 503 F2d 1250 (CA 3, 1974); *North Carolina Utilities Comm v Federal Communications Comm,* 537 F2d 787 (CA 4, 1976).

In the present case, Michigan's use tax act contains no directives which would require a federal agency to allocate costs in a particular manner. Its sole effect would be to increase somewhat the cost of petitioner's doing business in this state. It is true that the Federal Communications Commission will have to take into account the increased cost of doing business in determining what constitutes a fair and reasonable rate for its regulated Michigan business. However, so causing a federal agency to *consider* certain costs of doing business is far different from setting forth directives which leave it no choice but to allocate costs in a particular manner. Under plaintiff's argument, no enterprise subject to federal rate regulation could ever be taxed by a state once initial rates have been set, because state taxes are elements of the enterprise's cost of doing business, and any increase in taxation would "compel" a reconsideration of the rate structure. Since plaintiff has cited no authority for such a sweeping proposition, we decline to adopt it here. Given the foregoing, we conclude that there has been no showing of any Supremacy Clause violation.

Petitioner's final argument on appeal is that respondent's disparate treatment of petitioner and AT&T amounted to a denial of equal protection. We find no basis for reversal. Petitioner must

show that respondent has failed to tax similarly situated enterprises and that its failure to do so was intentional and knowing, rather than mistaken or the result of inadvertence. *Sunday Lake Iron Co v Wakefield Twp,* 247 US 350; 38 S Ct 495; 62 L Ed 1154 (1918); *Titus v State Tax Comm,* 374 Mich 476, 487; 132 NW2d 647 (1965) (ADAMS, J., *dissenting).* The Tax Tribunal found that respondent's classification attempted to distinguish those who purchase local telephone exchange services from those who do not. The tribunal went on to find that respondent "properly included [petitioner] in that classification of taxpayers" but that respondent made an "error" in its "failure to investigate the compensation scheme between AT &T Long Lines and Michigan Bell". The tribunal found that respondent had "missed a potential taxpayer" because of respondent's failure to "uncover *[sic]* that AT&T Long Lines may also be included in the purchasing of service category". The tribunal's characterization of respondent's conduct as mistaken, as opposed to intentional, is a factual finding which this Court must uphold if supported by competent, material and substantial evidence.

We believe that the evidence did in fact support a finding that respondent's failure to tax AT&T was a mistake, rather than deliberate discrimination. The tariffs or rates governing petitioner's relationship with Michigan Bell were not indentical to those governing AT&T. Until the tribunal held its hearing below, respondent could well have believed that AT&T was merely sharing revenues with its subsidiary, Michigan Bell. Similarly, respondent could also have formed a mistaken but innocent belief that in AT&T's case, there was in fact a unitary "interstate" network, whose indivisi-

ble character arose from AT&T's ownership of the entire enterprise. Applying this reasoning, respondent may have erroneously, yet without discriminatory intent, concluded that petitioner's use of Michigan Bell's exchange services was taxable, while AT&T's comparable use of local exchange facilities was not.

Petitioner has demonstrated the error of this reasoning. As noted above, any company's use of Michigan Bell's local exchange services is an intrastate aspect of that company's otherwise interstate business, properly subject to state taxation. Thus, AT&T's use of those Michigan Bell services is just as taxable as plaintiff's. However, petitioner has not demonstrated that respondent's error in omitting taxing AT&T was knowing or intentional. Accordingly, there has been no showing that respondent's failure to tax AT&T amounted to an equal protection violation under the standards announced in *Sunday Lake Iron, supra,* and *Titus, supra.*

In concluding our review of this issue, we find one caveat appropriate. Arguably, continued failure to tax similarly situated enterprises when the taxing authority is aware of a valid equal protection challenge such as the present one can itself evidence an ongoing equal protection violation. See *Wakefield, supra,* pp 352-353. Accordingly, any continued failure to tax AT&T could result in a violation of petitioner's right to equal protection, particularly for taxes applicable to periods following the release of this opinion. In order to avoid a finding that the imposition of future taxes on petitioner would violate equal protection, respondent should take affirmative steps toward imposing use taxes upon AT&T's analogous purchase of local exchange services. Since AT&T's tax liability

is not at issue here, our comment as to this matter is limited to the foregoing caveat concerning the validity of potential future use taxes upon petitioner. Our comment should not be construed as a binding order to impose similar taxes upon AT&T. Respondent may ultimately decide to adopt the alternative nondiscriminatory policy of taxing neither AT&T nor petitioner for their purchase of local exchange services.

Petitioner has not sought any remedy for respondent's failure to tax AT&T during the period between the hearing date below, when respondent first became aware of its error in failing to tax AT &T, and the issuance of this opinion. Accordingly, we decline to address the question of whether an ongoing equal protection violation has occurred since the hearing date.

The foregoing compels our conclusion that the use tax assessed by respondent for the period preceding the hearing, April 1, 1974, through March 31, 1978, was valid.

Affirmed.


T. M. BURNS, J. *(dissenting)*. I respectfully dissent from the majority's opinion. I agree with the majority that Const 1963, art 6, § 28 governs the standard for review of this case but feel that the Tax Tribunal's decision is not supported by competent, material and substantial evidence.

As indicated by the majority, MCI Telecommunications is in the business of providing long distance telephone communications to private customers. It operates pursuant to tariffs filed with the Federal Communications Commission. Under these tariffs, MCI has full control and responsibility for the message from sender to receiver. MCI maintains a series of microwave relay stations to

transport signals on interstate calls. Several terminals for MCI's microwave system are located in Southeastern Michigan. MCI's subscribers obtain access to these microwave relay stations through Michigan Bell's local telephone system. The subscriber dials an access number which when accepted by MCI's computer provides for the interconnection of Michigan Bell's lines with MCI's microwave relay system. The subscriber's telephone call then travels through Michigan Bells system to the MCI system. Respondent assessed taxes on the fees MCI paid Michigan Bell for access on the local exchange to its customers' phones.

Since Michigan Bell's local exchange becomes a part of an interstate communication system when interconnected with MCI's microwave relay system, I would find the use tax inapplicable. The use tax is imposed on telephone services by MCL 205.93a; MSA 7.555(3a) which provides:

"Sec. 3a. The use or consumption of the following services shall be taxed under this act in the same manner as tangible personal property is taxed under this act:

"(a) Intrastate telephone, telegraph, leased wire and other similar communications, including local telephone exchange and long distance telephone service which both originates and terminates in Michigan, and telegraph, private line and teletypewriter service between places in Michigan, but excluding telephone service by coin-operated installations, switchboards, concentrator-identifiers, interoffice circuitry and their accessories for telephone answering service and director advertising proceeds."

Since MCI uses Michigan Bell's services for interstate communications, the use tax is not applicable. Michigan Bell's local exchange service is

merely a channel through which the interstate communication travels at nearly the speed of light. Without access to Michigan Bell's lines, the interstate call cannot be completed. In fact, the tariffs under which MCI operates provide that Michigan Bell must provide MCI with such interstate service.

I am unable to find that the final leg of an interstate call can be characterized as "intrastate communication". "The business of conducting telecommunications between persons in different states constitutes interstate commerce." *State ex rel Utilities Comm v Southern Bell Telephone & Telegraph Co,* 288 NC 201, 208; 217 SE2d 543, 548 (1975). As stated by the North Carolina Court of Appeals in *Petition of Carolina Telephone & Telegraph Co,* 1 NC App 133, 137; 160 SE2d 128, 131 (1968):

"Although all of respondent's facilities are located in North Carolina, in performing the service involved in this proceeding, said facilities connected with those of another company to transmit intelligence between this State and other states and the intelligence transmitted was interstate from its origin to its termination."

In *Idaho Microwave, Inc v Federal Communications Comm,* 122 US App DC 253; 352 F2d 729 (1965), Idaho Microwave contended that it was not subject to federal regulations since it provided services between points in Idaho and, therefore, only engaged in intrastate communication. The Court felt otherwise noting that the facilities were:

"used as a link in the continuous transmission of television signals from Salt Lake City to Burley, Idaho; there is no interruption in the flow of the signals as it is practically instantaneous. Thus, though Idaho Microwave's physical facilities are located within Idaho, it

performs an interstate communication service when it takes part in the transmission of signals from Utah to Idaho." 352 F2d 732.

Likewise, MCI's use of Michigan Bell's local lines constitutes an interstate communication service. The fact that MCI pays for the use of Michigan Bell's local facilities does not change this result since Michigan Bell's facilities are used in interstate communication. As stated in *Ward v Northern Ohio Telephone Co*, 300 F2d 816, 819 (CA 6, 1962), *cert den* 371 US 820 (1962):

"although all its facilities are located in one state, and although it is a connecting carrier, a telephone company required to furnish lines to [an interstate carrier], on reasonable request, is considered a common carrier engaged in interstate communications."

While these cases dealt with the federal government's ability to regulate communication systems, their definitions of interstate commerce are still applicable to the instant case. Specifically, I note that the same standard has been used in a tax case in *Ealey v Bureau of Revenue*, 89 NM 160; 548 P2d 440 (1976). In *Ealey,* a telegraph operator sought exclusion of the income she received from transmitting interstate messages from her gross income for tax purposes. Plaintiff transmitted the telegraph messages to a central relay station located in New Mexico. The Court found that plaintiff:

"[A]ctually transmits the message from her office in Farmington, New Mexico. As stated in the Court of Appeals opinion of Judge Hernandez:

" 'Once a telegram is transmitted bound for an interstate destination, it becomes part of the national network of telegraphic communications. Each separate

mode of relay or transmissions cannot be isolated and taxed as a local incident.'

"As a result, then, the appellant is allowed to deduct from her gross receipts the amounts obtained from messages transmitted by her to ultimate points of destination outside of New Mexico." 548 P2d 441.

Likewise, I believe that local authorities cannot tax each separate mode of relay or transmission of a message through MCI's system. Since MCI uses Michigan Bell's local facilities as part of its interstate communications network, respondent may not charge a use tax against the fees MCI pays Michigan Bell.

While this analysis precludes the need for addressing further issues considered by the majority, I will summarize my positions on these issues since I disagree with the majority's analysis. Since I feel the use tax is inapplicable, *Complete Auto Transit, Inc v Brady,* 430 US 274; 97 S Ct 1076; 51 L Ed 2d 326 (1977), is also inapplicable. In *Complete Auto Transit,* the Supreme Court found that interstate commerce may be taxed if certain criteria are met. Since petitioner's activities in Michigan are an insufficient taxable nexus and application of the use tax in the instant case would unduly burden interstate commerce, these criteria are not met. I find *Ealey, supra,* and *Michigan Wisconsin Pipe Line Co v Michigan,* 58 Mich App 318; 227 NW2d 334 (1975), consistent with my position that there is an insufficient taxable nexus.

The majority's position would also unduly burden interstate communications. I feel that interstate communication deserves higher protection than the interstate transportation of goods. "[I]t is not only the right, but the duty, of Congress to see to it that intercourse among the States and the transmission of intelligence are not obstructed or

unnecessarily encumbered by State legislation."
*Pensacola Telegraph Co v Western Union Telegraph Co,* 96 US 1, 9; 24 L Ed 708, 710 (1877). The
Supreme Court in *Pensacola* emphasized the great
need for the unimpeded flow of information between states. According to the majority's position
in the instant case, each state which is involved
with the relay of the interstate communication
through the MCI network could impose a local tax.
MCI could, therefore, become liable to several
states for local taxes by transmitting a single
phone call through its system. MCI may also be
subject to disparate treatment, being taxed in
some states and not taxed in others. We note that
local Colorado authorities found that MCI could
not be taxed for purchasing similar services from
Mountain Bell.[1] This uncertainty in liability operates to discriminate against interstate carriers.

I also feel that respondent's imposition of this
tax against petitioner violates the Equal Protection Clause. This is the first time respondent has
ever claimed that the services provided by Michigan Bell are intrastate communication services.
Michigan Bell is allowed to treat these services as
interstate services. AT&T also has not been taxed
for purchasing identical services from Michigan
Bell. The record discloses that the failure to tax
these other companies was not inadvertent, but
based on respondent's finding that interstate communications were involved. Clearly this is an arbitrary and capricious application of the use tax
statute and, therefore, violates the Equal Protection Clause. *Yick Wo v Hopkins,* 118 US 356, 373;
6 S Ct 1064; 30 L Ed 220 (1886).

I would reverse the Tax Tribunal.

---

[1] In a letter dated August 8, 1983, the City and County of Denver's
Treasury Division determined that no taxable event occurred between
MCI and Mountain Bell. MCI and Mountain Bell's relationship is
substantially identical to the relationship between MCI and Michigan
Bell.