PETERSON v DEPARTMENT OF TREASURY

Docket No. 73748. Submitted December 17, 1984, at Lansing.—Decided September 4, 1985.

The Tax Tribunal held that petitioner, Noel G. Peterson, was personally responsible for sales taxes due the state from Bay Side Door, Inc., for the period from January 1, 1978, to December 31, 1979. The tribunal's conclusion was based on the finding that petitioner was an officer of the corporation who supervised the corporation's making of returns and payment of taxes for the period in question. Petitioner appealed, alleging that the tribunal's decision was not supported by competent, material and substantial evidence on the whole record. *Held:*

1. The proper standard of review of a Tax Tribunal decision involving the sales tax is whether the decision is authorized by law and is supported by competent, material and substantial evidence on the whole record.

2. The Department of Treasury, in order to hold an individual personally liable for a corporation's tax liability, must show that the person is an officer of the corporation who has control over, supervises, or is charged with the responsibility of, making of the corporation's tax returns and the payments of taxes. In this case, it was sufficiently shown that petitioner was an officer for a part of the time period in question and that he either controlled, supervised, or was responsible for making the corporation's returns and tax payments.

3. The record does not show that petitioner was both an officer and responsible for the tax returns and payments for the entire period referred to in the tribunal's decision. The matter is remanded for a redetermination of petitioner's share of the tax liability.

Affirmed in part and remanded.

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, Sales and Use Taxes § 165.
    See the annotations in the ALR3d/4th Quick Index under topic
    Sales or Use Tax.
[2] Am Jur 2d, Sales and Use Taxes §§ 47 *et seq.*
    See the annotations in the ALR3d/4th Quick Index under topic
    Sales or Use Tax.

1. TAXATION — SALES TAX — APPEAL.

Review of a decision of the Tax Tribunal involving application of the sales tax includes the determination of whether the decision is authorized by law and whether it is supported by competent, material, and substantial evidence on the whole record (Const 1963, art 6, § 28).

2. TAXATION — SALES TAX — CORPORATIONS — PERSONAL LIABILITY FOR CORPORATION'S TAX.

The Department of Treasury, in order to hold a person personally liable for a corporation's sales tax liability, must show that the person is an officer of the corporation and that this officer has control over, supervises, or is charged with the responsibility for, the making of the corporation's tax returns and the payments of taxes (MCL 205.65[2]; MSA 7.536[2]).

*O'Farrell, Basner & Smith* (by *Rod O'Farrell*), for petitioner.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, and *E. David Brockman* and *Ramon M. Alvarez*, Assistants Attorney General, for respondent.

Before: WAHLS, P.J., and D. E. HOLBROOK, JR., and C. A. WICKENS,* JJ.

PER CURIAM. On August 29, 1983, the Michigan Tax Tribunal adopted the findings of fact and conclusions of law reached by its hearing officer as its own. MCL 205.726; MSA 7.650(26). Thus, the Tax Tribunal found that the petitioner herein, Noel G. Peterson, was an officer of the now defunct Bay Side Door, Inc., a Michigan corporation, and, as such, he supervised the corporation's making of returns and payment of taxes due for the period between January 1, 1978, and December 31, 1979. Accordingly, the tribunal held that petitioner was personally responsible for Bay Side Door's failure to pay the taxes due to the state

---

* Circuit judge, sitting on the Court of Appeals by assignment.

pursuant to MCL 205.65(2); MSA 7.536(2). From this decision, petitioner appeals as of right. MCL 205.753(1); MSA 7.650(53)(1).

The sole issue raised by petitioner on appeal is whether the Tax Tribunal's decision is supported by competent, material, and substantial evidence on the whole record vis-à-vis MCL 205.65(2); MSA 7.536(2). See Const 1963, art 6, § 28; MCL 24.306(1)(d); MSA 3.560(206)(1)(d).

The Bay Side Door, located on Bay Road in Saginaw, was owned by John Bommarito. Before April of 1978, it housed two bars, a restaurant and a banquet hall. In April, 1978, the two bars, restaurant and banquet hall were closed. Petitioner reopened part of the building in April, 1978, and started to manage a new bar known as Noel's Place under the corporation's liquor license. John Bommarito filed an assumed name certificate for Noel's Place. Petitioner was managing Noel's Place with the intention of purchasing Bay Side Door, Inc., at a later time. He planned to lease the space inside the Bay Side Door building until he acquired Bay Side Door's liquor license and then he planned to purchase the business and equipment.

In his capacity as manager, petitioner "took care of the day-to-day operations and buying—buying the products and seeing the place was clean and the bill paying and what have you". Bay Side Door, Inc., owned the tables and chairs inside Noel's Place and Noel's Place operated under Bay Side Door's liquor license.

Petitioner did not receive any payment for his services and actually put money into the business with an eye toward purchasing it as a going concern.

In October of 1978, an agreement between petitioner and John Bommarito was executed whereby

petitioner agreed to purchase 49 percent of the stock of Bay Side Door, Inc., conditioned upon the Liquor Control Commission's approval and "upon terms and conditions to be agreed to". Also, on that date, petitioner was formally appointed as an officer of the corporation. Afterwards, petitioner continued to perform the day-to-day activities of managing Noel's Place. Later, other business operations were set up inside Bay Side Door's building. However, petitioner did not take on any new responsibilities with respect to Bay Side Door's other operations outside of managing Noel's Place. The new operations were each separately managed, but only Bay Side Door, Inc., filed any tax returns. The managers of these separate businesses were responsible for providing Bay Side Door, Inc., with any financial information they had concerning their respective business ventures.

Starting in January, 1979, petitioner began to sign Bay Side Door's tax returns. The first return represented the tax record for December, 1978. Thereafter, petitioner signed the tax forms as either "manager", "agent", or "vice president" of the corporation for January, 1979, through September, 1979. Likewise, petitioner signed the corporation's amended tax returns for January through June of 1979. Furthermore, petitioner testified that either he or the corporation's bookkeeper, Linda Cook, forwarded the tax payments to the state during the period of January, 1979, through September, 1979. He also testified, and the Tax Tribunal found, that petitioner abandoned his efforts in Bay Side Door, Inc., in December, 1979.

Petitioner was never advised about the possible ramifications of his signing the tax returns as an officer of the corporation. He explained that during his tenure with Bay Side Door everything was in

total chaos, mostly due to the owner's pending divorce proceedings. Finally, in November, 1979, petitioner realized that he would never fulfill his dream of owning Bay Side Door, Inc., and this is why in December, 1979, petitioner left the business.

Based upon these facts, the Tax Tribunal held that petitioner was responsible for the sales tax liability of the corporation from January 1, 1978, through December 31, 1979.

We begin our analysis by stating the correct standard of review. The Attorney General informs the Court that it is bound by the factual determinations of the Tax Tribunal absent fraud, error of law or the adoption of a wrong principle. This is incorrect. This case involves the application of the sales tax, not the valuation or allocation of the property tax. Therefore, the correct standard of review is outlined in Const 1963, art 6, § 28 and in MCL 205.753(1); MSA 7.650(53)(1). We thus review the Tax Tribunal's decision to determine whether it is authorized by law and whether it is supported by competent, material, and substantial evidence on the whole record. See and compare *MCI Telecommunications Corp v Dep't of Treasury*, 136 Mich App 28, 30; 355 NW2d 627 (1984).

The statute applied against petitioner is MCL 205.65(2); MSA 7.536(2), which provides as follows:

"If a corporation licensed under this act fails for any reason to file the required returns or to pay the tax due, any of its officers having control, or supervision of, or charged with the responsibility for making such returns and payments shall be personally liable for such failure. The dissolution of a corporation shall not discharge an officer's liability for a prior failure of the corporation to make a return or remit the tax due. The sum due for such a liability may be assessed and collected * * *."

.

In order to hold a person personally liable for a corporation's tax liability under this statute, the Department of Treasury must first show that the person is an officer of the corporation. Then it must show either (1) that this officer has control over the making of the corporation's tax returns and payments of taxes; or (2) that this officer supervises the making of the corporation's tax returns and payments of taxes; or (3) that this officer is charged with the responsibility for making the corporation's returns and payments of taxes to the state.

In this case, the department was able to show that petitioner was an officer of Bay Side Door, Inc., effective October 28, 1978. This conclusion was supported by the minutes of the corporation and by petitioner's own admissions. Thus, we hold that the Tax Tribunal's decision under this first statutory criterion is supported by competent, material, and substantial evidence on the whole record.

Next, the department effectively showed that petitioner either controlled, supervised or was charged with the responsibility for making the corporation's tax returns and tax payments from December, 1978, through December, 1979. This conclusion was supported by evidence which indicated that petitioner signed the corporation's tax returns for this period of time and from petitioner's own admissions that either he or Linda Cook forwarded the taxes to the state. Thus, we hold that the Tax Tribunal's decision under the second statutory criterion, with respect to this period of time, is supported by competent material, and substantial evidence on the whole record.

However, the record does not support a conclusion that petitioner was both an officer *and* respon-

sible for the corporation's making of returns and payments of taxes during any period other than December, 1978, through December, 1979. Therefore, petitioner is only personally responsible for the corporation's sales tax liability actually incurred during December, 1978, through December, 1979. It is unclear from the Tax Tribunal's decision whether this is the period to which petitioner's personal liability was limited. Accordingly, we remand this matter to the Tax Tribunal to calculate petitioner's share of Bay Side Door's sales tax liability consistent with this opinion.[1] We do not retain jurisdiction.

Affirmed in part and remanded.

[1] On June 5, 1981, the Department of Treasury issued two notices of final assessments to petitioner. These assessments held petitioner personally liable for the corporation's withholding tax ($6,877 plus interest and penalties) and the corporation's sales tax ($22,119 plus interest and penalties) for the taxable period of January, 1978, through September, 1980. The Tax Tribunal reversed the withholding tax assessment and affirmed the sales tax assessment. However, there is language in the Tax Tribunal's decision indicating that "the subject assessments * * * cover the taxable period of October, 1978 through December 1979". This remand is therefore necessary to clarify that petitioner's share of the corporation's sales tax liability is limited to the taxable period of December, 1978, through December, 1979.