**AT & T COMMUNICATIONS OF THE MOUNTAIN STATES, INC., Plaintiff–Appellee,**

v.

**STATE of Colorado, DEPARTMENT OF REVENUE, and Alan N. Charnes, as Executive Director of the Department of Revenue, Defendants–Appellants.**

No. 87SA253.

Supreme Court of Colorado, En Banc.

July 24, 1989.

Rehearing Denied Sept. 18, 1989.

Nancy J. Gegenheimer and R. Bruce Johnson, Holme Roberts & Owen, Denver, and James P. Kratochvill and J. Elaine Bialczak, Basking Ridge, N.J., for plaintiff-appellee.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Anthony S. Trumbly, Asst. Atty. Gen., Denver, for defendants-appellants.

Geoffrey T. Wilson, Denver, for amicus curiae Colorado Municipal League.

MULLARKEY, Justice.

In this appeal, we must decide whether the sale of local telephone network access services used in connection with interstate telephone calls is subject to state sales tax under section 39–26–104(1)(c), 16B C.R.S. (1982). We hold that it is taxable. We reverse the district court judgment and remand the case to that court to determine the amount of sales tax owed by AT & T Communications of the Mountain States, Inc. to the state of Colorado.

## I.

The telecommunications industry has undergone major changes since American Telephone & Telegraph Company was ordered to divest its telephone subsidiaries effective January 1, 1984, in the Modified Final Judgment (MFJ) of *United States v. American Telephone and Telegraph Company,* 552 F.Supp. 131 (D.D.C.1982), *aff'd sub nom. Maryland v. United States,* 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983). In compliance with the MFJ, the United States was divided into 161 "local access and transport areas" (LATAs) which are geographic zones drawn around major metropolitan areas for the provision and administration of telecommunication services. Colorado consists of two separate LATAs, the Denver LATA and the Colorado Springs LATA. *See generally GTE Sprint Communications Corp. v. Public Util. Comm'n,* 753 P.2d 212 (Colo.1988) (description of Colorado intraLATA telephone service markets).

Under the MFJ, a single company can no longer provide telephone services both *within* LATAs and *between* LATAs. *See United States Transmission Sys. v. Board of Assessment Appeals,* 715 P.2d 1249,

1254 (Colo.1986). Mountain States Telephone and Telegraph Company (Mountain Bell) [1] is a local exchange carrier which is restricted to providing telephone service only *within* each LATA. Mountain Bell is responsible for connecting individual customers to the local exchange system by means of a physical link between the customers' premises and a switch at a nearby Mountain Bell central office. The central office then can connect calls from the local exchange to an interexchange network. Connecting calls from the local exchange to the interLATA or interstate network is known as "access." *See generally* Kahn & Shew, *Current Issues in Telecommunications Regulation: Pricing,* 4 Yale J. on Reg. 191, 200–01 (1987). Local exchange access services (access services) are the originating or terminating links on either end of the intermediate communication link provided by interexchange carriers such as AT & T Communications and MCI. All of the access services provided by Mountain Bell which are at issue in this case are performed solely within the state of Colorado.

AT & T Communications (ATTCOM), acting through its subsidiary, AT & T Communications of the Mountain States, Inc., is one of several long distance or interexchange carriers which are limited to providing telephone services *between* LATAs as well as between states. Since Mountain Bell controls the telephone networks *within* each of the two Colorado LATAs, ATTCOM and other interexchange carriers must purchase access to the local exchange network from Mountain Bell in order to originate or complete their customers' interstate and interLATA calls.[2] The access services were set up under the MFJ, and the divestiture order requires Mountain Bell to offer local exchange access to all carriers in a non-discriminatory manner so as to open up the long distance telephone services market to other competitors be-

sides ATTCOM. *See United States v. AT & T,* 552 F.Supp. at 232–233.

In a typical interstate call facilitated by ATTCOM, the end-user or customer originates the call by sending the signal over the local exchange on equipment owned by Mountain Bell. Mountain Bell routes the call to a switching center operated by the customer's long distance carrier which, in this case, is ATTCOM. The signal is then routed over long distance lines and equipment owned by ATTCOM to a switching center in the destination state. Finally the signal is switched over to the local exchange network where it is sent over equipment owned by the local exchange carrier to the premises of the end-user receiving the call. *See National Ass'n of Regulatory Util. Comm'rs v. FCC,* 737 F.2d 1095, 1104 (D.C.Cir.1984) (description of processing of long distance telephone call), *cert. denied,* 469 U.S. 1227, 105 S.Ct. 1225, 84 L.Ed.2d 364 (1985); *GTE Sprint,* 753 P.2d at 214 n. 2 (same). Prior to divestiture the entire processing of an interstate call occurred on equipment owned by American Telephone & Telegraph Company, but because the MFJ prohibits a single company from providing both local and long distance telephone service, ATTCOM and the other interexchange carriers must pay a carrier access charge to Mountain Bell for their use of the local exchange network. The sales taxation of these access charges forms the subject of this dispute.

Since 1935, Colorado law has authorized the imposition of a sales tax on intrastate telephone service:

> There is levied and there shall be collected and paid a tax ... upon telephone and telegraph services, whether furnished by public or private corporations or enterprises for all *intrastate* telephone and telegraph service.

---

1. Mountain Bell, a former subsidiary of American Telephone & Telegraph Company, is now part of the regional financial holding company U.S. West, Inc. *See* L. Schlesinger, D. Dyer, T. Clough & D. Landau, *Chronicles of Corporate Change: Management Lessons from AT & T and Its Offspring* 184–201 (1987).

2. The testimony in this case indicates that other independent telephone companies also may provide access services in Colorado but the evidence described only Mountain Bell's access services.

§ 39–26–104(1)(c), 16B C.R.S. (1982) (emphasis added). The tax currently is imposed at the rate of three percent of the amount of the sale. § 39–26–106(1), 16B C.R.S. (1982).

In anticipation of the January 1, 1984 breakup of American Telephone & Telegraph Company, the Department of Revenue (the department) issued Revenue Bulletin No. 83–7 in October of 1983 (available on WESTLAW and LEXIS) which stated that the department interpreted the sales tax provision of section 39–26–104(1)(c) to apply to interexchange carriers' purchase of access services from Mountain Bell. The bulletin stated, "It is the Department's position that the services being provided for which 'carrier access charges' and 'customer access line charges' are assessed constitute 'intrastate telephone service' and are therefore taxable."

Accordingly, from January 1, 1984, the effective date of the MFJ, until July 31, 1984, ATTCOM paid sales taxes on its purchases of access services from Mountain Bell. These taxes included state sales tax, Regional Transportation District tax, and county and city sales tax totalling approximately $8.9 million. This amount was collected from ATTCOM by Mountain Bell as the statutory collecting agent for the Colorado Department of Revenue (the department). *See* § 39–26–105, 16B C.R.S. (1982) (vendor liable for collecting and remitting sales tax on sales made by vendor).

On November 20, 1984, ATTCOM filed a claim for refund with the department for the entire $8.9 million of taxes paid on telephone access services. Apparently without a hearing, the department agreed to refund the portion of sales tax in dispute which related to access charges for intrastate interLATA calls. The parties agreed that access services for such calls already

were taxed as part of the tax on intrastate telephone calls. Thus, the immediate dispute involves taxation of carrier access services for only interstate calls.[3] In its final decision issued August 19, 1985, the department denied ATTCOM's request for a refund of the remaining taxes paid on access services for interstate calls, approximately $7.4 million.[4] ATTCOM appealed the department's decision to the district court pursuant to section 39–21–105(2)(b), 16B C.R.S. (1982), and the district court tried the case *de novo*.

Before the district court, ATTCOM advanced three theories why its purchases of access services for interstate calls were not taxable under the statute which allows taxation of "intrastate telephone and telegraph services," section 39–26–104(1)(c). ATTCOM claimed that the purchases were not taxable because (1) they were *access* services, not *telephone* services; (2) they were *interstate*, not *intrastate* telephone services; (3) they were a *wholesale*, not *retail* purchase. The district court agreed with the second argument and found that the access services "constitute interstate commerce" and were "an integral part of an interstate call." As such, the trial court concluded that access services fell outside the reach of the statute which taxes only *intrastate* calls. The district court ordered the department to refund the $7.4 million to ATTCOM plus interest. The next month, on October 31, 1986, the district court granted ATTCOM's request for an injunction against the department to enjoin further collection of the tax on access charges for interstate calls.

The department appealed and the case was certified from the court of appeals to this court pursuant to section 13–4–109(3), 6A C.R.S. (1987).

---

3. Specifically, this dispute involves taxation of only *interexchange carrier* access services charges for interstate calls as opposed to *customer* access services charges. Testimony at trial by the department established that a portion of the access charges already are billed directly to the customers and the department levies sales tax on these charges.

4. The department alleges that although the amount of the disputed refund was $7.4 million, the amount of potential refund to ATTCOM from January 1984 until October 1986 when the district court entered its injunction would amount to $34.4 million. However, if ATTCOM were found liable for taxes on interstate calls, the department alleges that the amount of unpaid taxes would total more than $44 million.

## II.

The issue before this court is whether the sale of local telephone exchange network access services used in connection with interstate telephone calls is subject to sales tax under section 39–26–104(1)(c), 16B C.R.S. (1982), which taxes "all intrastate telephone and telegraph service." ATTCOM as the party requesting a tax refund has the burden of proving that the sales or services in question are not subject to taxation. §§ 39–21–105(2)(b) & 39–26–114(4), 16B C.R.S. (1982).

The trial court gave two reasons for its holding that access services were not taxable under the statute. It found, first, that access services "constitute interstate commerce" and second, that access services are "an integral part of interstate telephone service."

◼ We now address the interstate commerce issue. In analyzing other taxpayer challenges based on alleged interference with interstate commerce, we have assumed that the legislature intended to tax all that constitutionally may be taxed. *See Coors Porcelain Co. v. Colorado*, 183 Colo. 325, 517 P.2d 838 (1973), *cert. denied*, 419 U.S. 874, 95 S.Ct. 136, 42 L.Ed.2d 113 (1974); *see also Joslin Dry Goods Co. v. Dolan*, 200 Colo. 291, 296, 615 P.2d 16, 19 (1980). There is no constitutional barrier preventing a state from taxing interstate telephone service, provided the state taxation statute meets the four prong test of *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 278, 97 S.Ct. 1076, 1078, 51 L.Ed.2d 326 (1977). Under that test, a state tax on an interstate activity is constitutionally permissible, so long as the tax: 1) has a substantial nexus with the taxing state, 2) is fairly apportioned, 3) does not discriminate against interstate commerce, and 4) is fairly related to the services provided by the state. *Complete Auto*, 430 U.S. at 278, 97 S.Ct. at 1078.

Any doubt concerning the constitutionality of state taxation of interstate telephone calls was laid to rest in *Goldberg v. Sweet*, —— U.S. ——, 109 S.Ct. 582, 102 L.Ed.2d 607 (1989), decided after this case was argued. In *Goldberg*, the United States Supreme Court applied the *Complete Auto* test to uphold as constitutional an Illinois telecommunications excise tax levied on interstate telephone calls. *See also D.H. Holmes Co. v. McNamara*, 486 U.S. 24, 108 S.Ct. 1619, 100 L.Ed.2d 21 (1988) (applying *Complete Auto* test to uphold state tax on catalogs printed outside state which are shipped to customers within the state); *Wardair Canada, Inc. v. Florida Dep't of Revenue*, 477 U.S. 1, 106 S.Ct. 2369, 91 L.Ed.2d 1 (1986) (applying *Complete Auto* test to uphold state tax on sale of fuel used in international commerce). Thus, constitutionally, Colorado may tax the entire interstate telephone call subject to the limitations discussed above.

◼ ATTCOM contends that the proper interpretation of section 39–26–104(1)(c) must focus solely on the presumed legislative intent at the time the sales tax statute was enacted in 1935. Because states were unable to tax interstate commerce at that time, ATTCOM argues, the statute cannot now be interpreted to permit the taxation of any portion of an interstate telephone call. As will be discussed below, we do not accept ATTCOM's premise that access services are interstate commerce. Further, ATTCOM's legislative intent argument conflicts with the longstanding principle of statutory construction which provides that a statute written in general terms applies to subjects or activities which come into existence after adoption of the statute, including those which could not have been anticipated when the statute was enacted. 2A N. Singer, *Statutes and Statutory Construction* § 49.02, at 348–49 (4th ed. 1984). A similar argument was made and rejected in *Vournas v. Montgomery County*, 300 Md. 123, 476 A.2d 705 (1984). The Maryland court concluded that a transfer of real property to the United States as a result of condemnation was subject to taxation under state law even though that type of transfer was immune from taxation at the time when the state law was enacted and only later was permitted to be taxed because of a change in federal law.

Adoption of ATTCOM's argument would greatly curtail the legislature's use of gen-

erally phrased statutes. Under ATTCOM's reasoning, the legislature would be required to reenact this type of statute whenever new technology or changed conditions, including changes in federal law, might affect the scope of the statute's coverage. ATTCOM's approach is particularly inappropriate under the facts of this case because our legislature was aware of the department's October 1983 interpretive ruling which had advised the public that the newly created access services would be taxed as intrastate telephone services and the legislature chose not to amend the statute. The record shows that the department fully explained its position to the legislature during the 1985 legislative session when the legislature considered and rejected House Bill No. 1296 which would have exempted from sales tax the purchase of access services by interexchange carriers. Section 39–26–104(1)(c) remains unchanged, suggesting legislative acquiescence in the department's interpretation. *See Hewlett– Packard Co. v. Department of Revenue,* 749 P.2d 400, 406 (Colo.1988).

■ Having concluded that the statute is not frozen in time as of 1935, we cannot accept the trial court's reliance on interstate commerce as a ground for its decision. First, we note that two of the three cases upon which the trial court relied, *Cooney v. Mountain States Telephone & Telegraph Co.,* 294 U.S. 384, 55 S.Ct. 477, 79 L.Ed. 934 (1935), and *Western Union Telegraph Co. v. Alabama,* 132 U.S. 472, 10 S.Ct. 161, 33 L.Ed. 409 (1889), were discussed and rejected by the Supreme Court as factually outdated and legally superseded by *Complete Auto. Goldberg,* 109 S.Ct. at 591 n. 16. The trial court's third authority, *New Jersey Bell Telephone Co. v. State Board of Taxes and Assessments,* 280 U.S. 338, 50 S.Ct. 111, 74 L.Ed. 463 (1930), is subject to the same criticism.

Second, as the Colorado Municipal League correctly points out in its amicus brief, this is not an interstate commerce case. Although ATTCOM urges this court to approach the taxation question from the perspective of the end-user placing an interstate telephone call to another end-user,

there is no allegation that the Colorado telephone tax statute violates or even implicates the commerce clause of the federal constitution. The only issue before this court is whether a telephone hook-up to a local exchange network is taxable under section 39–26–104(1)(c). The sale of local exchange access services is the subject of taxation here, not the end-to-end interstate call. *See* L. Moak & F. Cowan, *Administration of Local Sales & Use Taxes* 50 (1961) (subject of sales tax is activity of retail sales of products or services). Surely, if a state may tax the entire interstate call, it is not prohibited from taxing less than the whole as our legislature has done in section 39–26–104(1)(c) by statutorily limiting the tax to intrastate telephone services. No interstate commerce issue is presented by this case and we are concerned only with interpreting the statute, section 39–26–104(1)(c).

### III.

■ Having rejected the interstate commerce argument, we turn to ATTCOM's sole remaining argument on appeal. ATTCOM contends that access services are integral to and indivisible from the interstate telephone call and, as such, are not within the Colorado sales tax provision on intrastate telephone services. ATTCOM does not dispute the fact that the access services are "services" for purposes of the statute; its contention is focused only on the term "intrastate." It argues that access services in this context have no independent existence or inherent value outside of an interstate call. ATTCOM contends that the nearly instantaneous transmission of telecommunications negates any characterization of access services as a separate or distinct part of an interstate call. Thus, under ATTCOM's analysis, access services are not "intrastate" services within the meaning of section 39–26–104(1)(c).

ATTCOM has not provided any post-divestiture case law to support its assertion that access services cannot be taxed by a state as intrastate telephone services simply by virtue of their relation to an interstate telephone call. Indeed, in *MCI Tele-*

*communications Corp. v. Department of Treasury*, 136 Mich.App. 28, 355 N.W.2d 627 (1984), *appeal denied* (1985), the interexchange carrier MCI unsuccessfully advanced the same argument asserted here by ATTCOM that access services were not taxable because they are an integral part of an interstate telephone call. As in the instant case, the issue in the MCI case was whether access charges paid by MCI used in conjunction with *interstate* calls were taxable under a state statute which allowed taxation only for *intrastate* telephone services. The Michigan Court of Appeals rejected MCI's "indivisibility of the telephone call" theory and held,

> We believe that [MCI's] argument overlooks the crucial distinction between the service which it provides to its own customers and that which it has purchased from Michigan Bell [the local exchange carrier]. [The Department of Treasury] does not propose to tax revenue from interstate calls made by [MCI's] Michigan customers. Instead, [the Department of Treasury] proposed only to tax the amounts which [MCI] has paid to Michigan Bell in order to facilitate its customers' calls. The fact that its customers make calls using parts of the interstate network does not change the fact that [MCI] *has purchased an exchange service which was in all respects provided and located in Michigan.*

136 Mich.App. at 31–32, 355 N.W.2d at 629 (emphasis added). Our analysis leads us to conclude, as the Michigan appellate court did, that access services for interstate telephone calls are taxable as intrastate telephone service.

Because the term "intrastate" is not defined in the Colorado sales tax statute, we assume that the legislature intended the word to have its plain and ordinary meaning. *People v. District Court*, 713 P.2d 918, 921 (Colo.1986). "Intrastate" means "existing within a state." *Webster's Third New International Dictionary* 1186 (1986). Thus, access services are intrastate if they are provided within Colorado.

As a result of divestiture, factually and legally the access services must be intrastate in character. The parties do not dispute that the access services which ATTCOM purchases from Mountain Bell are provided by facilities, equipment, and personnel which are located entirely within the state of Colorado. Because the MFJ allows Mountain Bell to operate only within LATAs, by definition the only telephone services which Mountain Bell is able to provide in this case are *intra*state telephone services. Conversely, ATTCOM and other interexchange carriers are prohibited from providing intrastate, intraLATA telephone services and may provide only interLATA or interstate services. After divestiture, the purchase and sale of access services are arm's length transactions (subject to government regulation) between two separate companies. Both are engaged in providing telephone services but their services are mutually exclusive and complementary. An interstate telephone call cannot occur without the operations of both companies. Access services came into being as a result of the divestiture in order to provide the point of entry to, or exit from, the local telephone network.[5] Since the access services are performed solely by Mountain Bell, the services cannot be anything other than intrastate in nature.

Moreover, access services are identifiable as a separate element of a telephone call as can be seen from our description of the technical aspects of access services in *GTE Sprint*, 753 P.2d at 214. In *GTE Sprint* we discussed the two types of access services then provided by Mountain Bell and the negative effects which the inferior type of access services had on interstate calls because it required special customer equipment and resulted in delays and lesser sound quality. *Id.* at 214 n. 1.

5. An ATTCOM witness testified that, after divestiture, "in order to provide services, it was necessary to find some way then to connect these points of presence which were the end point, if you will, of AT & T's facilities to their customers, and provisions were made in the modified final judgment and in the access charge plan prescribed by the FCC, to in fact have the Bell operating companies offer an access service to enable the connection of the end user customers through the network, so that end calls could be placed."

Evidence presented at trial in this case showed that access services and long distance calls are not one indivisible product, as ATTCOM contends, but are separate, identifiable, and quantifiable services. *Accord* Kahn & Shew, *Current Issues in Telecommunications Regulation: Pricing,* 4 Yale J. on Reg. 191, 205–06 (1987) (discussing "fallacy" of argument that access services and long distance services constitute a "joint product" without separately identifiable costs). Expert testimony established that the carrier access charges that ATTCOM pays are generally for a particular quantity of services which are measured in discrete units by the length of the time of the telephone call. Granted, completion of the access service occurs very quickly, but the speed with which the service is performed does not negate the fact that a taxable service is performed. Thus, contrary to ATTCOM's assertion, access services clearly have identifiable physical characteristics which affect the interstate transmission portion of the telephone call and may be separated from that portion of the call.

Likewise, we do not accept the argument that access services are not taxable because they have no value except as part of a completed interstate telephone call. First, we note that one could as easily argue the converse that interstate telephone service has no value without the access services to connect the call to the customers. The sale of access services constitutes a completed transaction. The fact that access is part of a larger service provided to ATTCOM's customers does not make access services non-taxable. Second, access service properly is valued separately because it has "a separate identifiable incremental cost associated causally with providing it." *Id.* at 201. The cost for access services occurs when a customer is connected to the interstate network "even if he or she never uses the connection." *Id.* Access services in and of themselves have value because:

Even if most customers were not interested in [access service] in order to place calls, many would want it if only to receive calls. And even if they had no specific expectation of placing or receiving calls, many would still be willing to pay for the *opportunity* to do so, when and if the occasion arose.

*Id.* (emphasis in original).

Other telecommunications cases consistently have held that the interstate nature of telecommunications does not necessarily mean that its component parts are indivisible and exempt from state taxation. *See Capitol Cablevision Corp. v. Hardesty,* 168 W.Va. 631, 285 S.E.2d 412 (1981) (state can properly tax the transmission of television broadcast signals in-state even though the signals may originate out-of-state); *Western Electric Co. v. Weed,* 185 Colo. 340, 524 .P.2d 1369 (1974) (telephone instruments, wires, and related equipment are not exempt from sales taxation as a wholesale purchase); *AT & T Communications of the Mountain States, Inc. v. City of Boulder,* 775 P.2d 53 (Colo.App.1988), *cert. denied,* (July 3, 1989) (sale of local telephone exchange access is subject to taxation under Boulder sales tax ordinance); *Madison Group, Inc. v. Wisconsin Dep't of Revenue,* No. 87–S–287 (Wisconsin Pub. Serv. Comm'n Order, March 17, 1989) (available on WESTLAW and LEXIS) (upholding state sales tax on local telephone access charges for interstate calls).

The district court erred in focusing on the end-to-end-user interstate nature of the call instead of on the specific activity being taxed—Mountain Bell's sale of local network access services. We conclude that access services are intrastate telephone services within the meaning of the Colorado sales tax law, section 39–26–104(1)(c).

## IV.

The divestiture of American Telephone & Telegraph Company has resulted in the now arms-length transaction between former sister companies Mountain Bell and ATTCOM. The sale of local exchange access services, like other sales of goods and services within the state, is subject to state sales tax. We conclude that the sale of access services by Mountain Bell to ATTCOM constitutes intrastate telephone

service which is taxable under section 39–26–104(1)(c). We reverse the judgment of the district court and remand the case for consideration of the sales taxes owed by ATTCOM to the Colorado Department of Revenue.