GTE SPRINT COMMUNICATIONS CORPORATION v
DEPARTMENT OF TREASURY

Docket No. 108395. Submitted April 17, 1989, at Lansing. Decided
August 8, 1989. Leave to appeal applied for.

GTE Sprint Communications Corporation petitioned the Tax
Tribunal for review of a Department of Treasury assessment of
use taxes on intrastate long-distance calls placed through GTE
and on access services purchased by GTE from Michigan Bell to
facilitate the origination or termination of long-distance calls
made through GTE. The Tax Tribunal upheld the assessment.
GTE appealed.

The Court of Appeals *held:*

1. Purchase by a long-distance telephone service of access
service for use in originating and terminating interstate long-
distance telephone communications is not subject to use tax.

2. Revenue collected by an interstate long-distance telephone
service provider for intrastate long-distance telephone calls is
subject to a use tax even where the calls are unauthorized,
incidental to the provider's business, and involve the transmis-
sion of signals outside the state, then back to Michigan.

Affirmed in part, reversed in part and remanded for further
proceedings.

1. TAXATION — TELECOMMUNICATIONS — INTERSTATE TELEPHONE COM-
MUNICATIONS — ACCESS SERVICE.

Purchase by a long-distance telephone service of access service for
use in originating and terminating interstate long-distance
telephone communications is not subject to use tax.

2. TAXATION — JUDICIAL CONSTRUCTION.

Tax statutes are construed in favor of the taxpayer and against
the government.

3. TAXATION — TELECOMMUNICATIONS — INTRASTATE LONG-DISTANCE
COMMUNICATIONS.

Revenue collected by an interstate long-distance telephone service

REFERENCES
Am Jur 2d, State and Local Taxation §§ 416-418.
See the Index to Annotations under Long-Distance Calls; Sales and
Use Taxes; Telecommunications.

provider for intrastate long-distance telephone calls is subject to a use tax even where the calls are unauthorized, incidental to the provider's business, and involve the transmission of signals outside the state, then back to Michigan.

*Farhat, Story & Kraus, P.C.* (by *Richard C. Kraus*), and *Richard N. Wiley,* for petitioner.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Richard R. Roesch* and *Ross H. Bishop,* Assistant Attorneys General, for respondent.

Before: SULLIVAN, P.J., and SAWYER and MARILYN KELLY, JJ.

SAWYER, J. Petitioner appeals from a judgment of the Tax Tribunal which affirmed as modified an assessment made against petitioner by respondent Michigan Department of Treasury. The modified assessment amounted to $684,338 in use tax and $68,433 in penalties plus accrued interest. On appeal, petitioner argues that it was not subject to the use tax imposed. We reverse in part and remand.

Petitioner is a California-based communications common carrier licensed by the Federal Communications Commission to provide long-distance telephone service. Petitioner does not provide local telephone service and, therefore, must make use of local telephone services in order to provide its service. That is, a long-distance telephone call involves three discrete steps in the transmission from caller to receiver. The originating call begins at the caller's telephone and is carried over transmission and switching facilities to the entry point of a long-distance network. This is known as the originating link. The long-distance carrier then transmits the call over its facilities to the exit

point of the network in the area where the call is to be received. This is the intermediate link. Finally, the call is transmitted over the facilities of a local telephone company to the receiving telephone. This is known as the terminating link. Petitioner provides only the intermediate link. Accordingly, petitioner, like other long-distance telephone communications companies, must contract with local telephone companies which provide the originating and terminating links. The use of the facilities and equipment of a local telephone company for these links is known as access services.

At issue in this appeal is whether a use tax is due on the monies paid by petitioner to Michigan Bell for access services purchased by petitioner from Michigan Bell for use with its long-distance telephone service in Michigan. Also at issue is the taxation on charges collected by petitioner from its customers for intrastate long-distance telephone service, that is, where a caller within the State of Michigan places a telephone call to a telephone also located within the State of Michigan. Finally, we should note that Michigan Bell consistently charged petitioner for the use tax due on the access service fees paid by petitioner to Michigan Bell, but petitioner deleted the tax from its remittances to Michigan Bell.

Respondent assessed petitioner for the use taxes it maintained were due for petitioner's activities within Michigan and petitioner challenged the assessment. As noted above, the Tax Tribunal agreed with respondent, with some modifications based upon the testimony of the auditor.

Petitioner first argues that its purchase of access services from Michigan Bell for use in originating and terminating interstate long-distance telephone communications is not subject to use tax under

MCL 205.93a; MSA 7.555(3a). We agree. MCL 205.93a; MSA 7.555(3a) provides in pertinent part as follows:

The use or consumption of the following services shall be taxed under this act in the same manner as tangible personal property is taxed under this act:

(a) Intrastate telephone, telegraph, leased wire and other similar communications, including local telephone exchange and long distance telephone service which both originates and terminates in Michigan, and telegraph, private line and teletypewriter service between places in Michigan, but excluding telephone service by coin-operated installations, switchboards, concentrator-identifiers interoffice circuitry and their accessories for telephone answering service and directory advertising proceeds.

First, we note that tax statutes are construed in favor of the taxpayer and against the government. See *Gould v Gould,* 245 US 151, 153; 38 S Ct 53; 62 L Ed 211 (1917), wherein the Court commented as follows:

In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government, and in favor of the citizen.

The above language from the *Gould* decision was quoted with approval by our Supreme Court in *Metzen v Dep't of Revenue,* 310 Mich 622, 627; 17 NW2d 860 (1945), and *Standard Oil Co v Michigan,* 283 Mich 85, 88; 276 NW 908 (1937). More recently, this Court stated a similar rule in *Detroit v*

*Norman Allan & Co,* 107 Mich App 186, 191; 309 NW2d 198 (1981):

> In addition, tax statutes are strictly construed. *Topps of Warren, Inc v City of Warren,* 27 Mich App 59, 62; 183 NW2d 310 (1970). As the Court stated in *In re Dodge Brothers,* 241 Mich 665, 669; 217 NW 777 (1928):
> "The scope of tax laws may not be extended by implication or forced construction. Such laws may be made plain, and the language thereof, if dubious, is not resolved against the taxpayer."

With these rules in mind, we turn to petitioner's argument that the access services for which petitioner pays Michigan Bell do not come within the provisions of § 3a of the Use Tax Act. First, petitioner argues that access services are not "communications" as that word is used in the Use Tax Act. We agree. Indeed, the Tax Tribunal agreed that access services are not in and of themselves communications, but merely a part of the communication:

> No matter that access services are not in themselves "communications." The statute authorizes the taxation of qualifying services provided as a part of communications.

Rather, the tribunal concluded that the statute authorized the taxation of parts of communications and, moreover, concluded that access services are part of "local telephone exchange service," which may be taxed under the act. Thus, we must determine whether the statute authorizes the taxation of parts of a "communication" or service and whether access services are part of local telephone exchange services as used in the act. In both cases, we conclude that the statute does not cover access services.

Although petitioner sets forth separate arguments as to why "access services" do not come within the meaning of either "communications" or "telephone exchange service" as used in the Use Tax Act, we believe our attention can be more fruitfully focused on the meaning of "telephone exchange service" as used in the Use Tax Act. We reach this conclusion since the tribunal has concluded that access services are not "communications," but merely a part of the communication. Additionally, the Use Tax Act refers to telephone, telegraph, leased wire and other similar "communications" as "including local telephone exchange and long distance telephone service." Therefore, we believe that determining whether local telephone exchange service involves an end-to-end communication, or whether it includes parts of communications, will shed light on whether a communication under the act must be a complete, end-to-end communication or whether it can include a part of a communication.[1] That is, by exploring the meaning of the term "local telephone exchange service" we believe that it can be determined whether the Legislature, in enacting § 3a of the Use Tax Act, intended to place a tax on parts of communication services in addition to complete communications. On the basis of this inquiry, we believe that the Legislature was taxing complete "telephone calls" rather than the constituent parts of those calls.

We begin our analysis by looking to the federal Communications Act of 1934, 47 USC 151 *et seq.* 47 USC 153(r) defines "telephone exchange service" as follows:

---

[1] However, in support of the proposition that the term "communications" should refer only to an end-to-end communication, see 47 USC 153(a) which defines "wire communication" as the transmission of a signal "between the points of *origin and reception* of such transmission . . . ." (Emphasis added.)

"Telephone exchange service" means service within a telephone exchange, or within a connected system of telephone exchanges within the same exchange area operated to furnish to subscribers intercommunicating service of the character ordinarily furnished by a single exchange, and which is covered by the exchange service charge.

Thus, as referred to under the federal act, a telephone exchange service is a service which provides local, as opposed to long-distance, end-to-end communications provided to a subscriber for a service charge. That is, telephone exchange service is what a residential or commercial customer utilizes when he picks up the telephone receiver, hears a dial tone and places a toll-free call to a local telephone number;[2] it is nothing more and, more importantly, it is nothing less. Moreover, decisions of the federal courts acknowledge that the term "telephone exchange service" is a term of art and refers to service within a local exchange system as contrasted with long-distance service. See *North Carolina Utilities Comm v Federal Communications Comm,* 552 F2d 1036, 1045 (CA 4, 1977) ("telephone exchange service" is a statutory term of art and refers to discrete local exchange system service as contrasted to long-distance service), and *American Telephone & Telegraph Co v Federal Communications Comm,* 572 F2d 17, 20, n 1 (CA 2, 1978) ("telephone exchange service" is commonly referred to as "local" or "basic" "exchange service" as contrasted with MTS ["message telecommunications service" or "message toll service"] and WATS ["Wide Area Telecommunications Service"] long-distance services). See also, generally, *Ameri-*

---

[2] See 47 USC 153(s), which defines "telephone toll service" as a "telephone service between stations in different exchange areas for which there is made a separate charge not included in contracts with subscribers for exchange service."

*can Telephone & Telegraph Co v Federal Communications Comm,* 266 US App DC 47; 832 F2d 1285 (1987), wherein the court's opinion treats access services and local telephone exchange services as separate and distinct concepts. Finally, we also note that petitioner's expert witness, Ronald Havens, testified without contradiction that "local telephone exchange service" has a commonly understood meaning in the industry separate and distinct from the meaning of "access services."[3]

Furthermore, we are unpersuaded by the Tax Tribunal's reliance on *United States v American Telephone & Telegraph Co,* 552 F Supp 131 (D DC, 1982), the so-called "Modification of Final Judgment" (MFJ) which divested AT&T of its Bell operating companies (BOCS). Specifically, the tribunal relied upon the MFJ's definition of "exchange access"[4] as the "provision of exchange services for the purpose of originating or terminating interexchange telecommunications." *Id.* at 228. The tribunal relies upon that definition in its conclusion that access services is included within the term telephone exchange service. We disagree. First, the opinion was offering a definition of "exchange access" and not "local exchange service." Second, the definitions were provided for terms employed in the opinion in the context of the MFJ which structured the divesture of the BOCS by AT&T and was not intended to establish a general definition. Third, that definition does not equate "exchange

---

[3] As respondent points out, the commonly understood meaning of a term within the industry does not compel the conclusion that the same meaning should be ascribed to that term as used in a tax statute. Nevertheless, we believe that, where the Legislature uses a term of art which has a specific meaning within the industry affected by the statute, the industry's commonly accepted definition of that term is instructive in determining what meaning the Legislature intended for a term not otherwise defined in the statute.

[4] The term "exchange access" is referred to by petitioner and by this Court in this opinion as "access services."

access" with "local telephone exchange service." Rather, it establishes that exchange access is a service which must be provided by a BOC to permit an "interexchange telecommunication." Indeed, if anything, the court's definition of "exchange access" supports the proposition that exchange access or access services is a concept separate and distinct from telephone exchange service, directly contradicting the conclusion of the tribunal.[5]

Finally, it is important to note that § 3a of the Use Tax Act was added in 1959. However, the so-called "Other Common Carriers," such as petitioner, did not enter the long-distance telephone service market until after decisions by the Federal Communications Commission in the early 1970s to license the other common carriers to compete with AT&T. See *Nat'l Ass'n of Regulatory Utility Comm'rs v Federal Communications Comm,* 237 US App DC 390, 398-401; 737 F2d 1095 (1984), and *MCI Telecommunications Corp v Federal Communications Comm,* 229 US App DC 203, 208; 712 F2d 517 (1983). Prior to that time, when AT&T was the only interstate long-distance carrier, interstate long-distance revenues received by AT&T were shared between AT&T and the local carrier, which may or may not have been an AT&T subsidiary (that is, a BOC). *Nat'l Ass'n of Regulatory Comm'rs, supra* at 399. Respondent did not tax the revenue sharing between AT&T and Michigan Bell (a BOC), taking the position that those funds transfers were "shared revenues" and not a purchase and sale subject to the use tax. Thus, in 1959, when § 3a of

---

[5] To the extent that the definitions provided by the court in the MFJ are relevant to this appeal, we note that it defines "telecommunications" as meaning "the transmission, *between or among points specified by the user,* of information of the user's choosing . . . ." *Id.* at 229; emphasis added. This supports the proposition that the term "communications" contemplates a complete, end-to-end communication and not one link in a communication.

the Use Tax Act was enacted, the concept of "access services" or charges therefor by Michigan Bell to an independent interstate long-distance carrier simply did not exist. Accordingly, it must necessarily follow that the Legislature did not contemplate the taxability of those access service charges when enacting the use tax. Indeed, few would argue that the world of telephone communications was significantly less complex and varied in 1959 than it is today.

For the above reasons, we believe that § 3a of the Use Tax Act treats a taxable communication as a complete, end-to-end communication. Under that section, telephone calls can be divided into three categories: a local telephone call, an intrastate long-distance telephone call, and an interstate long-distance telephone call.[6] Under § 3a, the first two items are taxed and the third is not. However, we believe that the intent of § 3a is to tax the revenues received for a completed telephone call paid by the consumer to the provider for a local or intrastate long-distance telephone call. We do not believe that it is within the contemplation of § 3a to tax a portion of a telephone call as evidenced by the charges paid by one communications company to another.

This holding is further supported, as discussed above, by the rule that the scope and applicability of tax statutes are strictly construed in favor of the taxpayer and against the government. *Norman Allan, supra.* That is, if the Legislature wishes to tax something, it must make its intent clear. *Id.* at 191; *Gould, supra* at 153. While it is conceivable that the Legislature may choose to tax the access services, we do not believe that § 3a of the Use

---

[6] Section 3a does, of course, also tax telegraph, leased wire and other similar communication services, which are not at issue in this case.

Tax Act clearly manifests a legislative intent to do so and, therefore, we must construe that statute in favor of the taxpayer and hold that the fees paid by petitioner for access services are not subject to the use tax.

Because we hold that § 3a of the Use Tax Act does not tax the fees paid for access services, we need not address petitioner's arguments that the assessment of use tax on access services used in interstate telecommunications violates the Commerce Clause of the United States Constitution. US Const, art I, § 8, cl 3. However, we would refer the parties to the recent decision in *Goldberg v Sweet,* 488 US —; 109 S Ct 582; 102 L Ed 2d 607 (1989).[7]

Next, we turn to petitioner's argument that it should not be liable for payment of a use tax on the intrastate long-distance calls placed by its customers since those calls were unauthorized and incidental to petitioner's interstate long-distance telephone service and, in any event, those calls were of an interstate nature since all such calls were transmitted to petitioner's interstate network and had to travel to Illinois before the call was returned to Michigan. We disagree.

During the assessment period in question, petitioner was not licensed or authorized to provide

---

[7] See also *MCI Telecommunications Corp v Dep't of Treasury,* 136 Mich App 28, 33-35; 355 NW2d 627 (1984) (taxation of access services does not violate the Commerce Clause). Additionally, we note that, although we reach a different result than the *MCI* opinion, our decision does not necessarily contradict the *MCI* holding inasmuch as the *MCI* case considered a different attack on the applicability of the use tax to access services. Specifically, *MCI* considered whether access services are intrastate or interstate in nature, as well as certain constitutional challenges. The *MCI* decision did not, we believe, directly address the question whether access service fees come within the provisions of § 3a of the Use Tax Act; rather, the *MCI* Court assumed that they do. However, to the extent that the *MCI* decision is at odds with our decision in the instant case, we disagree with the majority's resolution of the *MCI* case.

intrastate long-distance telephone service. Its authorization was restricted to supplying interstate telecommunications only. However, it was not possible for petitioner to prevent its customers from making incidental and unauthorized calls between points in Michigan over the interstate network. We believe that the revenues received by petitioner for these intrastate calls are nevertheless taxable under § 3a of the Use Tax Act. First, we note that § 3a specifically levies the use tax on "long distance telephone service which both originates and terminates in Michigan . . . ." MCL 205.93a(a); MSA 7.555(3a)(a). Thus, intrastate long-distance calls placed by petitioner's customers, even if unauthorized and incidental to petitioner's interstate service, clearly come within the express terms of § 3a of the Use Tax Act. The fact that petitioner may have been unauthorized to provide intrastate service and its customers were able to place such intrastate calls only because petitioner was unable to prevent those calls is irrelevant to the taxability of those calls. Simply put, we are aware of no authority for the proposition that a tax is not due on a good or service provided even though the seller of the good or service is unauthorized to make the sale or provide the service. Moreover, with respect to petitioner's argument that the intrastate calls should be exempt from the use tax because they travel on petitioner's interstate network, we believe that argument is without merit.[8] In light of the Supreme Court's decision in *Goldberg, supra,* we do not believe the fact that an intrastate telephone call makes use of an interstate network and must travel outside the

---

[8] Apparently, the manner in which petitioner's telephone system functioned between 1980 and 1984 was such that any call placed by a Michigan customer to another location in Michigan would travel out of Michigan to petitioner's facility in Woodworth, Illinois, and be returned to the receiving telephone in Michigan.

State of Michigan before returning into the state to the receiving telephone renders it untaxable. Under our reading of *Goldberg,* we do not believe such a tax violates the Commerce Clause. See also *Complete Auto Transit, Inc v Brady,* 430 US 274; 97 S Ct 1076; 51 L Ed 2d 326 (1977). Simply put, § 3a of the Use Tax Act imposes a tax on all long-distance telephone calls which originate and terminate in Michigan and it is irrelevant that such a call may travel over an interstate telephone network.

We next turn to petitioner's argument that it should be excused from its obligation to pay the use tax on the intrastate telephone calls because it was unable to determine whether a particular call was intrastate and whether it was taxable. We disagree. Apparently, between 1980 and 1984 when Sprint's customers were making unauthorized intrastate calls, petitioner was unable to determine from its equipment whether any particular call was placed from within Michigan or without Michigan. That is, petitioner was unable to determine whether any particular call was of an interstate or intrastate nature.[9] This does present an interesting question concerning a taxpayer's liability when it is not possible to specifically determine which revenue is subject to tax and which revenue is not subject to tax. While it would seem at first blush that the responsibility is with the taxpayer to determine the amount of its revenues which is subject to tax, we do not believe that the tribunal's decision adequately dealt with this

---

[9] Apparently, during the time period in question, petitioner could only determine at which point a telephone call entered its own system. For example, since Michigan calls were routed through petitioner's facility in Woodworth, Illinois, it could not determine whether the call was placed in Michigan or some location outside Michigan which was also routed through Woodworth. Petitioner could only determine that the call had entered its system at Woodworth and terminated at a telephone in Michigan.

issue. In addressing petitioner's arguments, the tribunal focused on rejecting petitioner's claims that it was not obligated to pay the tax because it could not determine whether the revenues were subject to tax. The tribunal's decision, however, did not address petitioner's argument that it should be excused from paying the tax because of its inability to segregate taxable revenues from nontaxable revenues. Accordingly, we believe the appropriate remedy is to remand the matter to the tribunal to determine the merits of petitioner's argument.

Finally, petitioner argues that the tribunal erroneously concluded that petitioner was subject to a penalty of ten percent on the use tax assessed upon the access services and intrastate long-distance telephone calls. Since we have determined that no tax is due on the access service fees, there cannot, of course, be any penalty related to those services. Accordingly, we need only determine whether the tribunal should have imposed a ten percent penalty on the tax due related to the intrastate telephone calls. MCL 205.23(3); MSA 7.657(23)(3) provides for a ten percent penalty on the amount of tax due where the deficiency in the payment of tax is due to the negligence or intentional disregard of the law by the taxpayer.[10] The Tax Tribunal assessed the penalty in the case at bar on the basis of petitioner's negligence. We believe it appropriate to refer this question to the Tax Tribunal for their determination of the appropriateness of the penalty in light of the resolution that the tribunal reaches on petitioner's argument

[10] Subsequent to the time period at issue in this case the Legislature amended MCL 205.23; MSA 7.657(23) to provide that the penalty for the intentional disregard of the law was twenty-five percent, MCL 205.23(4); MSA 7.657(23)(4), while the penalty for a negligent deficiency remained at ten percent, MCL 205.23(3); MSA 7.657(23)(3). See 1986 PA 58.

that it should be excused from the payment of tax due to its inability to segregate revenues between intrastate and interstate telephone calls. Specifically, if the tribunal determines on remand that petitioner is liable for the payment of the use tax on the intrastate telephone calls, it shall reconsider its determination that the negligence penalty should be assessed and determine whether petitioner was sufficiently negligent in failing to pay the use tax on the intrastate long-distance calls that it should be assessed the penalty.

For the above reasons, we conclude that § 3a of the Use Tax Act does not impose the tax on fees paid by petitioner to Michigan Bell for access services. That section does, however, impose a tax on the revenues received by petitioner for intrastate long-distance telephone calls placed by petitioner's customers. Accordingly, we reverse that portion of the Tax Tribunal's decision which held that petitioner owed tax on the access service fees. Furthermore, we affirm the determination of the Tax Tribunal that the revenues received by petitioner for intrastate telephone calls are subject to the use tax, but remand the matter to the tribunal to determine (1) whether petitioner should be excused from paying the use tax due to its inability to determine if a particular telephone call was of an intrastate or interstate nature and (2) whether, if petitioner should not be excused from paying the use tax, it is appropriate in light of the circumstances of this case to assess the ten percent penalty for negligent failure to pay the tax.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. No costs, neither party having prevailed in full.