CRAWLEY, Judge.
The City of Montgomery assessed a business-license tax against Dial Tone, Inc., pursuant to City Ordinance 48-91, which taxes “[e]ach person, firm, or corporation which operates a telephone exchange” within the city. Contending that it does not operate a telephone exchange, Dial Tone appealed this assessment to the Board of Revenue Appeals. The Board upheld the assessment. Dial Tone then appealed to the Montgomery Circuit Court for a trial de novo. Both parties moved for a summary judgment. The circuit court entered a summary judgment for the City, and Dial Tone appealed to this court.
Dial Tone contends that the circuit court erroneously entered the summary judgment because, it claims, there is a disputed question of fact as to whether it operates a telephone exchange. We disagree. The record before us contains wholly undisputed facts. Both parties agree about what Dial Tone does. Our task is simply to apply the law to the undisputed facts; i.e., to determine whether Dial Tone’s business constitutes, as a matter of law, the operation of “a telephone exchange.”
The Montgomery Municipal Code does not define the term “telephone exchange.” The Federal Communications Act of 1934, 47 U.S.C. § 153(r), defines “telephone exchange service” as follows:
“ ‘Telephone exchange service’ means service within a telephone exchange, or within a connected system of telephone exchanges within the same exchange area operated to furnish to subscribers intercommunicating service of the character ordinarily furnished by a single exchange, and which is covered by the exchange service charge.”
One court has stated that “telephone exchange service” is “a statutory term of art, and means service within a discrete local exchange system.” North Carolina Util. Comm’n v. FCC, 552 F.2d 1036, 1045 (4th Cir.) (citing 47 U.S.C. § 153(r)), cert. denied, 434 U.S. 874, 98 S.Ct. 223, 54 L.Ed.2d 154 (1977). Another court has explained:
“[A]s referred to under the federal act, a telephone exchange service is a service which provides local, as opposed to long-distance, end-to-end communications provided to a subscriber for a service charge. That is, telephone exchange service is what a residential or commercial customer utilizes when he picks up the telephone receiver, hears a dial tone and places a toll-free call to a local telephone number.”
GTE Sprint Communications Corp. v. Department of Treasury, 179 Mich.App., 276, 282, 445 N.W.2d 476, 479 (1989).
In support of its argument that it does not operate a “telephone exchange,” Dial Tone cites Western Union Tel. Co. v. American Bell Tel. Co., 105 F. 684 (C.C.D.Mass.1900), rev’d on other grounds, 125 F. 342 (1st Cir.1903), in which the court defined a “telephone exchange” as
“an arrangement for putting up and maintaining wires, poles, and switchboards within a given area, with a central office, and the necessary operators to enable the individual lines of telephones within that area to converse with each other.”
105 F. at 696. It is undisputed that Dial Tone has no telephone lines, wires, or switching equipment that enable one telephone to be connected to another. Dial Tone leases local telephone lines from the BellSouth company and then resells local telephone service access to customers. Dial Tone contends, therefore, that because it merely resells a service and has no equipment that will enable a telephone to function, it cannot be the operator of a telephone exchange.
We reject the argument that, to operate a telephone exchange, one must own or handle the equipment that allows a *594 telephone system to function. It is apparent that the Alabama Public Service Commission (“APSC”) considers Dial Tone is to be the operator of a telephone exchange. The record on appeal demonstrates that on July 14, 1997, the APSC issued Dial Tone a “Certificate of Public Convenience and Necessity,” thereby authorizing Dial Tone to operate “as a Local Exchange tele-com-munications carrier in all areas of the State of Alabama.” At a hearing on Dial Tone’s application for the certificate, Dial Tone’s president was asked what kind of service Dial Tone proposed to offer, and he answered, “[L]ocal phone service.” The record indicates that Dial Tone filed with the APSC a tariff in which it described its “local exchange service” as follows:
“The company’s local telephone service provides a customer with the ability to connect to the company’s switching network which enables the customer to: “— place or receive calls to any calling station in the local calling area.... ”
We hold that a service provider such as Dial Tone is the operator of a telephone exchange, because it furnishes the benefits of telephone communication to its customers by “directly faeilitat[ing] two-way communication between a significant number of unrelated persons or businesses.” See Alabama State Dep’t of Revenue v. Telamarketing Communications, 514 So.2d 1388, 1890 (Ala.Civ.App.1987) (quoting United States Transmission Systems, Inc. v. Board of Assessment Appeals, 715 P.2d 1249, 1254 (Colo.1986)). In Telamarketing Communications, supra, this court held that companies that resell long-distance telephone services are engaged in the “telephone business” for purposes of the telephone gross-receipts license tax of § 40-21-58, Ala.Code 1975. The court explained:
“The taxpayers are what are known in the communications field as ‘resellers.’ They are engaged in the business of reselling long distance telephone service. They do not own transmission facilities, such as telephone lines, as do AT & T and South Central Bell, whom we will refer to as the ‘traditional’ telephone companies. Rather, the taxpayers lease long distance telephone lines from the traditional telephone companies and use those lines in furnishing long distance telephone service to their customers. The taxpayers purchase long distance telephone service from the traditional companies in bulk and can then resell such service to their customers at lower rates than the customers would ordinarily receive from traditional companies.
“It is undisputed that when § 40-21-58 [the telephone gross-receipts license tax] was enacted in 1935, there was no such thing in the communications field as a reseller of telephone service. Indeed, it has apparently only been since the breakup of AT & T in the early 1980s that resellers have come into existence. No doubt to keep up with these changes in the communications field, the Alabama Legislature amended § 40-21-58, effective April 29, 1986, to specifically include resellers among those subject to the tax.”
514 So.2d at 1389.
Our decision in Telamarketing Communications recognized the business and economic reality that “resellers” of telephone service perform the same functions as the “traditional” telephone companies. Because of that reality, they are subject to many of the same requirements as the traditional companies, among those requirements being the obligation to tax and business-license assessments.
The judgment of the Montgomery Circuit Court is affirmed.
AFFIRMED.
ROBERTSON, P.J., and YATES, MONROE, and THOMPSON, JJ„ concur.