2006 WY 35

**QWEST CORPORATION, Appellant (Petitioner),**

**v.**

**STATE of Wyoming, by and through the WYOMING DEPARTMENT OF REVENUE, Appellee (Respondent).**

No. 05–7.

Supreme Court of Wyoming.

March 22, 2006.

---

Representing Appellant: Ryan Schwartz and John E. Masters, Hathaway & Kunz, P.C., Cheyenne, Wyoming; Larry H. McMillin, Qwest Services Corporation, Denver, Colorado; Robert R. Gunning and Neil I. Pomerantz, Silverstein & Pomerantz, LLP, Denver, Colorado.

Representing Appellee: Patrick J. Crank, Attorney General; Michael L. Hubbard, Deputy Attorney General; Martin Hardsocg, Senior Assistant Attorney General; Catherine D. Parker, Assistant Attorney General.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Qwest Corporation (Qwest) appeals from a decision of the State Board of Equalization (SBOE) upholding a sales tax assessment. Qwest challenges the SBOE's finding that an End User Common Line charge (EUCL) constitutes a charge for intrastate telephone services that is subject to Wyoming sales and use tax. Qwest claims that even if the charge is taxable, the majority of the assessment was barred by the statute of limitations. We find that the EUCL charge falls outside the scope of the tax imposition statute and accordingly, we reverse.

## ISSUES

[¶ 2] Qwest presents the following issues for review:

1. Whether the State Board of Equalization for the State of Wyoming ("SBOE") erred in concluding that an End User Common Line charge Qwest collected from its Wyoming customers on a monthly basis constitutes a charge for "intrastate telephone ... services" subject to Wyoming state and local sales tax under Wyo. Stat. Ann. § 39–15–103(a)(i)(C).

2. Whether the SBOE erred in concluding that the statute of limitations found in Wyo. Stat. Ann. § 39–15–110(b) does not bar that portion of the sales/use tax assessment issued to Qwest by the Wyoming Department of Revenue ("Department" or "Respondent") for the period [of] July 1997 through May 2000.

The Department of Revenue restates the first two issues and presents a third issue for review:

1. Did the State Board correctly conclude that the "End User Common Line Charge" paid by Wyoming consumers to Qwest for local telephone service was subject to sales tax pursuant to Wyo. Stat. § 39–15–103(a)(i)(C) (Lexis 2001)?

2. Did the State Board properly conclude that Wyo. Stat. § 39–15–110(b) (Lexis 2001) did not operate as a bar on the portion of the assessment from July 1997 through May 2000?

3. Did the State Board violate its own rules, when it failed to recite the Department's burden of proof?

## FACTS

[¶ 3] This matter relates to the sales and use tax assessed against Qwest resulting from an audit for the period of July 1, 1997 through December 31, 2001. The audit revealed that Qwest billed all of its customers for the EUCL charge but did not remit sales tax for amounts received.[1] Qwest considered the charge as compensation for interstate telephone services not subject to Wyoming sales tax. The EUCL charge is described as follows:

**Federal Access Charge.** $6.00 per month. The $6.00 [charge] reflects a charge in a month prior to July 1, 2003. The charge as of July 1, 2003 has increased to $6.50 per month. **This interstate charge,**

---

1. The EUCL charge is also known as a federal access charge.

which is imposed by the Federal Communications Commission, is meant to recover a portion of the customer's local loop (i.e., connection from the customer's [premises] to the telephone company's central office and switching equipment) **that is used for providing interstate services.** In recent years, the recovery of these interstate assigned costs has been moving from a per minute charge[ ], paid by interstate, long distance providers, to a flat charge paid by customers, regardless of the amount of long distance service used.[2] (Emphasis added.) The charge is assessed to all of Qwest's customers on a non-transactional basis. The charge is imposed regardless of whether the customer chooses to obtain interstate long distance service from a provider such as AT & T, MCI, or Sprint.[3]

[¶ 4] The Department of Audit deliberated for several months before deciding that the EUCL charge was subject to Wyoming sales tax. Dan Noble, administrator of the Excise Tax Division, testified that:

From May until probably September, I think we probably deliberated over this because I wanted to kind of get a feel for whether this is an issue that we had had an audit for in the past, any kind of information had been provided associated with, you know—and like I said, we searched through our own rules, through our own publications to try to figure out if we had even ever dealt with this issue.

**Really what it boiled down to after all of that was basically I had to make a call. Does the statute as it was written encompass the EUCL charge ... ? And I felt that it did absent anything, any information to the contrary.**

(Emphasis added.) On July 11, 2003, the Department of Audit issued its final findings on the matter, ultimately concluding the EUCL charge was taxable.

[¶ 5] Pursuant to the results of the audit, the Department of Revenue (Department) issued an assessment on July 21, 2003. The

Department found that Qwest owed $3,428,102.95 in additional tax plus $1,553,797.16 in interest. No penalty was assessed. Qwest objected and a hearing was held before the SBOE beginning on May 10, 2004. The hearing lasted two days.

[¶ 6] On September 8, 2004, the SBOE issued its decision affirming the Department's assessment as it related to the EUCL charge. Qwest filed a Petition for Review in the district court. The district court certified the case to this Court, and we agreed to review the SBOE's decision.

### STANDARD OF REVIEW

[¶ 7] When reviewing cases certified pursuant to W.R.A.P. 12.09(b), we apply the appellate standards which are applicable to the court of the first instance. *Powder River Coal v. State Bd. of Equalization,* 2002 WY 5, ¶ 5, 38 P.3d 423, 426 (Wyo.2002). Our review is governed by Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2005), which provides:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

---

2. This definition was developed by the Office of Consumer Advocate, an independent division within the Wyoming Public Service Commission. Both parties generally agreed to this definition during proceedings before the SBOE.

3. All of Qwest's customers have the ability to receive interstate calls and to make toll free, credit card, calling card, or collect telephone calls.

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

We affirm an agency's conclusions of law when they are in accordance with the law. *Powder River Coal,* ¶ 6. However, when the agency has failed to properly invoke and apply the correct rule of law, we correct the agency's error. *Id.*

[¶ 8] The paramount issue in this case is whether the EUCL charge is subject to taxation under Wyoming law. This determination necessarily involves the interpretation of Wyoming's tax imposition statute and the Department's rules. This presents a question of law which we review *de novo. Chevron U.S.A., Inc. v. State,* 918 P.2d 980, 983 (Wyo.1996). Our rules of statutory interpretation are well established.

... [W]e look first to the plain and ordinary meaning of the words to determine if the statute is ambiguous. A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability. Conversely, a statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations. We have said that divergent opinions among parties as to the meaning of a statute may be evidence of ambiguity. However, the fact that opinions may differ as to a statute's meaning is not conclusive of ambiguity. Ultimately, whether a statute is ambiguous is a matter of law to be determined by the court.

*State ex rel. Wyo. Dept. of Revenue v. UPRC,* 2003 WY 54, ¶ 12, 67 P.3d 1176, 1182 (Wyo.2003) (internal citations omitted). "Once the court determines a statute is ambiguous the court 'will resort to general principles of statutory construction in the effort to ascertain legislative intent.'" *Richards v. Board of County Com'rs,* 6 P.3d 1251, 1253 (Wyo.2000).

In ascertaining the legislative intent in enacting a statute ... the court ... must look to the mischief the act was intended to cure, the historical setting surrounding its enactment, the public policy of the state, the conditions of the law and all other prior and contemporaneous facts and circumstances that would enable the court intelligently to determine the intention of the lawmaking body.

We generally defer to the construction placed on a statute by the agency that is charged with its execution, provided, however, that the agency's construction does not conflict with the legislature's intent. In this case, we are also cognizant of the principle that statutes which are penal in character are generally strictly construed. *Petroleum Inc. v. State Bd. of Equalization,* 983 P.2d 1237, 1240 (Wyo.1999) (internal citations omitted). We also apply these rules when interpretating administrative rules and regulations. *Powder River Coal,* ¶ 6 (citing *State ex rel. Dept. of Rev. v. Buggy Bath,* 2001 WY 27, ¶ 6, 18 P.3d 1182, 1185 (Wyo. 2001)).

[¶ 9] We are further guided by principles related to tax imposition statutes. "Tax statutes are to be construed in favor of the taxpayer and are not to be extended absent clear intent of the legislature." *Chevron U.S.A., Inc.,* 918 P.2d at 985.

In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government and in favor of the citizen.

*Amoco Production Co. v. Dept. of Revenue,* 2004 WY 89, ¶ 18, 94 P.3d 430, 438 (Wyo. 2004). Thus, taxes may not be imposed by any means other than a clear, definite and unambiguous statement of legislative authority. *Chevron U.S.A., Inc.,* 918 P.2d at 984; *Amoco Production Co.,* ¶ 18. *See also* Wyo. Const. art. 15, § 13 (stating "[n]o tax shall be levied, except in pursuance of law, and every law imposing a tax shall state distinctly the

object of the same, to which only it shall be applied.").

### *DISCUSSION*

[¶ 10] Qwest argues that the EUCL charge is not subject to taxation in Wyoming. The Department disagrees and contends that the services Qwest provides forming the basis for the EUCL charge occur within the state and should be taxed. The parties assert a different reading of the imposition statute to support their claims. However, before we analyze the statute, it would be helpful to gain an understanding of the nature and purpose of the EUCL charge as it relates to telephone services provided to Wyoming customers.

### *EUCL Charge/Access Service*

[¶ 11] Many important aspects of modern telecommunications law developed in the wake of the breakup of the AT & T monopoly. In 1982, a Modified Final Judgment (MFJ) entered in the case *United States v. AT & T*, 552 F.Supp. 131 (D.D.C.1982), *aff'd sub nom.*, 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983) changed the telecommunications industry by requiring the breakup of telephone companies so that no one company can provide both interstate and intrastate services. "In compliance with the MFJ, the United States was divided into 161 'local access and transport areas' (LATAs) which are geographic zones drawn around major metropolitan areas for the provision and administration of telecommunication services."[4] *AT & T Com. v. Dept. of Revenue*, 778 P.2d 677, 678 (Colo.1989). Consequently, under the MFJ, a single company can no longer provide telephone services both *within* LATAs and *between* LATAs.[5] Qwest is a local exchange carrier that is restricted to providing telephone service only within a LATA.[6] As such, it is not permitted to sell interstate long distance telephone services. *Id.*

[¶ 12] However, Qwest does play a role in interstate long distance calls. An interstate long distance call involves three discrete steps in the transmission from caller to receiver:

> The originating call begins at the caller's telephone and is carried over transmission and switching facilities to the entry point of a long-distance network. This is known as the originating link. The long-distance carrier then transmits the call over its facilities to the exit point of the network in the area where the call is to be received. This is the intermediate link. Finally, the call is transmitted over the facilities of a local telephone company to the receiving telephone. This is known as the terminating link.

*GTE Sprint Com. v. Dept. of Treasury*, 179 Mich.App. 276, 445 N.W.2d 476, 477 (1989).

---

4. Wyo. Stat. Ann. § 37–15–103(a)(vi) (LexisNexis 2001) defines a LATA to be "geographic regions created as part of the divestiture of [AT & T] which defined the areas where regional Bell operating companies were permitted to provide telecommunication services[.]"

5. InterLATA is defined as "[s]ervices, traffic or facilities that originate in one LATA, crossing over and terminating in another Local Access and Transport Area.... This can be either Interstate or Intrastate service, traffic or facilities." Newton's Telecom Dictionary 437 (21st ed.2005). In contrast, intraLATA is defined as "[t]elecommunications services that originate and terminate in the same Local Access and Transport Area.... This can be either Interstate or Intrastate service, traffic or facilities." *Id.* at 447. Wyoming is comprised of only one LATA. *Union Tel. Co. v. Qwest Corp.*, No. 02–CV–209–D, 2004 U.S. Dist. LEXIS 28417, at *3 (D.Wyo. May 11, 2004).

6. A "local exchange company" is defined as "a telecommunications company that provides telephone access lines to members of the general public who are its customers[.]" Wyo. Stat. Ann. § 16–9–201(a)(v) (LexisNexis 2001). "Local exchange" is defined as "[t]he telephone company exchange where subscriber[']s lines are terminated. Also called an End Office." Newton's Telecom Dictionary 497 (21st ed.2005). "Exchange access" is defined as

> the provision of exchange services for the purpose of originating or terminating interexchange telecommunications. Such services are provided by facilities in an exchange area for the transmission, switching, or routing of interexchange telecommunications originating or terminating within the exchange area. The Telecommunications Act of 1996 defined exchange access as ... the offering of access to telephone exchange services or facilities for the purpose of the origination or termination of telephone toll services.

*Id.* at 320.

Long-distance telephone communications companies must contract with local telephone companies, such as Qwest, to provide the originating or terminating links in order to complete the interstate call. *Id.*

[¶ 13] Qwest maintains a local loop which is the connection or circuit between the consumer and its central office, or switching point. By connection with Qwest's local loop, customers simultaneously have: (1) access for intrastate local services; (2) access for intrastate long distance services; and (3) access for interstate long distance services. Thus, Qwest provides the integral link needed to complete an interstate call. *See, e.g., AT & T Com.,* 778 P.2d 677 *passim.* Stated another way, Qwest connects its individual customers to its local exchange system. Qwest's central office then connects calls from the local exchange to an interexchange network. The use of the facilities and equipment of a local telephone company to establish the integral link to local customers is known as access service. *GTE Sprint Com.,* 445 N.W.2d at 477. Access service is defined by the Federal Communications Commission (FCC) as including "services and facilities provided for the origination or termination of any interstate or foreign telecommunication." FCC Access Charges, 47 C.F.R. § 69.2(b) (1990).

[¶ 14] The costs Qwest incurs in maintaining the local loop are not readily attributable to either intrastate or interstate activity because the loop is involved in local, intrastate long distance, and interstate long distance telephone communications. However, the FCC requires that twenty-five percent of the cost of maintaining the local loop be subject to federal jurisdiction and that reimbursement for this cost be recovered from interstate rates.[7] Historically, this cost was collected from the long distance carriers. As explained by an expert witness who testified, on behalf of Qwest, at the hearing:

Q. Why doesn't Qwest recover the costs of providing the interstate calls from the long distance providers?

A. Actually, they did at one time. The FCC chose to move from a charge assessed to long distance carriers to recovering the cost of providing that service in two ways: There is a flat rate and a usage rate, much like the Wyoming Commission has chosen to recover the cost of the access to the intrastate Wyoming long distance network on a flat rate in the local charges and the usage rate in the usage long distance charges.

Presently, Qwest charges a flat fee established by the FCC that represents the cost of providing access service for interstate long distance. This flat fee is the EUCL charge. The amount of the EUCL charge is determined by the FCC based on the amount of interstate telephone traffic that flows through Qwest's facilities. The amount of interstate traffic is determined by information contained in the tariffs that Qwest files with the FCC for the interstate telephone services it provides. At all pertinent times, Qwest filed tariffs with the FCC regarding the EUCL charge. Prior to the audit, Qwest did not remit sales tax to the State of Wyoming on the amounts it billed or received as EUCL charges.

### Wyoming's Imposition Statute

[¶ 15] The question before us is whether an access charge for connection to the local network for the ability to make or receive an interstate call is subject to Wyoming sales and use tax. The imposition statute levies an excise tax on "[t]he sales price paid for intrastate telephone and telegraph services including the consideration paid for the rental or leasing of any equipment or services incidental thereto[.]" Wyo. Stat. Ann. § 39–15–103(a)(i)(C) (LexisNexis 2001). While this statutory language clearly indicates that intrastate telephone services are to be taxed, it is not clear what constitutes an

---

7. Accordingly, the remaining seventy-five percent of Qwest's costs of providing access to its local loop are deemed to be incurred in providing access for local and intrastate long distance telephone communications. This portion is regulated by the Wyoming Public Service Commission (PSC) and is included in the basic monthly service rate Qwest bills to its customers. Qwest files tariffs with the PSC and remits sales tax for these services. This appeal does not involve the amount Qwest bills or receives for providing access for local or intrastate long distance.

intrastate telephone service. "Intrastate telephone services" is not further defined in the statute.

[¶ 16] The Department argues that Qwest is providing a telephone service—access—to its customers in Wyoming. It reasons that because Qwest provides all of the switching within Wyoming and because all of the equipment used is located completely within Wyoming, that the EUCL charge should be subject to Wyoming sales and use tax. Furthermore, the Department claims that access to other networks is incidental to intrastate telephone service because Qwest's Wyoming telephone customers automatically receive interstate access along with their local or intrastate service. On the other hand, Qwest claims that the EUCL charge is associated with interstate long distance and, therefore, cannot be compensation for an "intrastate telephone service." While both interpretations of the statute appear plausible, we must construe the statute favorably to Qwest. *See, e.g., Amoco Production Co.,* ¶ 18 (where statute is susceptible to more than one reasonable interpretation, it must be construed against government, and in taxpayer's favor).

[¶ 17] By including the word intrastate to modify telephone services, the legislature expressed intent to limit the scope of the imposition statute. Use of the specific term "intrastate" signals that a distinction is to be made between intrastate telephone services and other services, i.e., interstate telephone services. "Intrastate" is defined as "[s]ervices, traffic or facilities that originate and terminate within the same state. Therefore, if related to telephone, falling under the jurisdiction of that state's telephone regulatory procedures." Newton's Telecom Dictionary 448 (21st ed.2005). It is significant that the EUCL charge is not regulated within Wyoming. The FCC retains jurisdiction over the EUCL charge and sets a cap on the EUCL rate.[8] "Since the charges are ordered by the FCC as a means of making all customers

share in the costs of interstate service, we conclude that the income is generated from interstate commerce."[9] *South Cent. Bell Telephone v. Celauro,* 735 S.W.2d 228, 231 (Tenn.1987).

[¶ 18] The Department does not dispute that the EUCL charge is federal for regulatory purposes, but claims that Qwest's role in switching interstate calls occurs within Wyoming, thus meeting the definition of an intrastate service for tax purposes. The Department's rules define "intrastate telephone service" as "the intrastate two-way transmission of sound, data, or other forms of information by any means from one point to another within this state." Rules, Wyoming Department of Revenue (2000), ch. 2, § 3(k). The Department argues that the switching of interstate calls involves a two-way transmission within Wyoming, i.e., the switch from the customer's home to the central office or vice versa.

[¶ 19] Qwest argues that the Department's definition does not support its position because an interstate call does not occur entirely within the state of Wyoming. Qwest urges us to look beyond the switching that takes place at its central office and to consider the call as being the transmission. The call should be viewed from its starting point and ending point, not solely on how it might be routed within Wyoming's borders. Qwest reasons that if the purpose of interstate access service is to allow one end of a call to originate within one state and to terminate in a different state, then the service should not be considered an intrastate service.

[¶ 20] The Department's definition of intrastate telephone service supports Qwest's view. "Two-way traffic" is defined as "[a] type of circuit operation that provides for both originating and terminating traffic." Newton's Telecom Dictionary 876 (21st ed.2005). The access service at issue fails this definition because, standing alone, it is not a two-way transmission. The access ser-

---

8. FCC Access Charges, 47 C.F.R. § 69.1(a) (1990) states, "[t]his part establishes rules for access charges for interstate or foreign access services provided by telephone companies on or after January 1, 1984."

9. The Tennessee court ultimately concluded the access charge was subject to its sales tax. As discussed more fully below, however, the Tennessee imposition statute clearly encompasses interstate telephone services. *See infra* footnote 13.

vice provides a two-way transmission only when it is connected to the interstate network at which point the connection is not "from one point to another within Wyoming."

[¶ 21] We agree with Qwest that we should look at the origination and termination point of the call to determine whether it comprises an intrastate telephone service. The common understanding of intrastate telephone service would not include interstate long distance calls. A customer placing a call to Montana or receiving a call from Florida probably believes she is a party to an interstate long distance call. At that point, she probably does not believe that she is receiving intrastate telephone service. The distinction between an intrastate and interstate long distance call was recognized in *Union Tel. Co. v. Qwest Corp.*, No. 02–CV–209–D, 2004 U.S. Dist. LEXIS 28417, at *5 (D.Wyo. May 11, 2004). In that case, the court identified an intrastate long distance call as

> one that originates and terminates in different local service areas, but within the borders of a single state. Intrastate long distance service provided by wireline service is subject to the jurisdiction of and regulations by state public utility commissions, and is generally offered to subscribers pursuant to tariffs filed with and approved by the state commissions.

*Id.* In contrast, "[a]n interstate long distance call is one that originates and terminates in different states. Interstate long distance service is subject to the jurisdiction of and regulation by the FCC under the Communications Act of 1934. *See* 47 U.S.C. § 151 *et seq.*" *Id.* Under a reasonable and common sense interpretation of the statute and the Department's definitions, the EUCL charge does not represent an intrastate telephone service. Giving effect to the legislature's choice to tax only "intrastate telephone services" means that a charge for connecting customers to interstate long distance calls is not subject to the tax.

[¶ 22] Our focus upon the two-way transmission of sound is similar to the analysis used by the court in *GTE Sprint*. The issue before the Michigan Appellate Court was whether per-minute access fees charged by local exchange carriers (LEC's) to interexchange carriers were subject to a use tax imposed on "intrastate telephone, telegraph, leased wire and other similar communications, including local telephone exchange and long distance telephone service which both originates and terminates in Michigan...." *GTE Sprint Com.*, 445 N.W.2d at 477. The Michigan Appellate Court upheld the Tax Tribunal's conclusion that "access services are not in and of themselves communications, but merely a part of the communication." *Id.* at 478. The court concluded that the Michigan use tax required a complete, end-to-end communication to constitute a taxable communication. *Id.* at 480. *See also In the Matter of Petition for Emergency Relief and Declaratory Ruling Filed by the BellSouth Corporation*, No. FCC 92–18, 7 FCC Rcd. 1619, 1992 FCC LEXIS 2915 (Jan. 16, 1992) (rejecting state's contention that the local access portion of interstate voicemail service could be severed from interexchange company's service, finding instead that the end-to-end call produced the two-way transmission path).

[¶ 23] The Michigan court's focus on the scope of "intrastate telephone ... communications" closely resembles our inquiry into the scope of the term "intrastate two-way transmission" under the Department's regulation. *See* 47 U.S.C. § 153(22) (equating the terms "interstate communication" and "interstate transmission"). Like the Michigan court, we find that the tax imposition statute requires a complete, end-to-end communication. Thus, the access service for which the EUCL charge compensates does not constitute an "intrastate two-way transmission of sound."

We recognize that other cases have decided similar issues differently. The Department points to *AT & T* to support its position that Qwest's location and switching within Wyoming subjects it to state tax. The Colorado Supreme Court held that the sale of local telephone network access services used in connection with interstate telephone calls was subject to state sales tax under 16B Colo.Rev.Stat. § 39–26–104(1)(c) (Bradford

1982).[10]   However, we are not inclined to follow the reasoning of *AT & T* for several reasons.

[¶ 25]   First, in reaching its decision, the Colorado Supreme Court relied on *MCI Telecommunications v. Dept. of Treasury*, 136 Mich.App. 28, 355 N.W.2d 627 (1984).   The Michigan Court of Appeals subsequently determined that Michigan's imposition statute did not encompass charges for access service in *GTE Sprint Communications Corp. v. Michigan Dept. of Treasury*, 179 Mich.App. 276, 445 N.W.2d 476 (1989).   The court in *GTE* specifically discussed its prior holding in *MCI* and concluded that:

> [A]lthough we reach a different result than the *MCI* opinion, our decision does not necessarily contradict the *MCI* holding inasmuch as the *MCI* case considered a different attack on the applicability of the use tax to access services.   Specifically, *MCI* considered whether access services are intrastate or interstate in nature, as well as certain constitutional challenges.   The *MCI* decision did not, we believe, directly address the question whether access service fees come within the provisions of § 3a of the Use Tax Act; rather, the *MCI* Court assumed that they do....

*Id.* at 480–81 n.7. While the *GTE* court found that its holding was not necessarily in conflict with the prior holding in *MCI*, it indicated that to the extent there was contradiction, *MCI* reached the wrong result.[11]   *Id.*

[¶ 26]   Next, the Colorado Supreme Court found the district court erred in focusing on the end-to-end user interstate nature of the call instead of on the specific activity being taxed.   Although our imposition statute is similar to Colorado's, the Department's definition of intrastate telephone services narrows the scope of these services to the *"intrastate two-way transmission* of sound, data, or other forms of information by any means from *one point to another within this state."*   In the absence of such a regulation, we might be more inclined to follow the rationale of the Colorado Supreme Court.

[¶ 27]   Finally, *AT & T* was decided in the context of specific and long-standing administrative treatment of the tax issue. In 1983, the Colorado Department of Revenue issued a bulletin advising of the taxable nature of the access charge in anticipation of the 1984 breakup of the American Telephone & Telegraph Company.   The bulletin stated, "It is the Department's position that the services being provided for which 'carrier access charges' and 'customer access line charges' are assessed constitute 'intrastate telephone service' and are therefore taxable."   *AT & T Com.*, 778 P.2d at 680.   The Wyoming Department of Revenue has not issued a similar bulletin or any other public form of written guidance such as a rule, regulation, or guideline that directly addresses the taxable nature of the access charge.

[¶ 28]   The Department claims that even if the EUCL charge is deemed to compensate for interstate telephone services, there is still a taxable retail event.   The Department's regulations provide that "[a]ll rentals of equipment or services incidental to intrastate telephone services including but not limited to ... access to a telephone transmission system shall be considered retail in nature and shall be subject to the sales tax."   Rules, Wyoming Department of Revenue (2000), ch. 2, § 14(gg).   According to the Department,

---

**10.**  16B Colo.Rev.Stat. § 39–26–104(1)(c) (Bradford 1982) imposes a sales tax "[u]pon telephone and telegraph services, whether furnished by public or private corporations or enterprises for all intrastate telephone and telegraph service[.]"

**11.**  In any event, we find the dissenting opinion in *MCI* more persuasive.

> I am unable to find that the final leg of an interstate call can be characterized as "intrastate communication".   "The business of conducting telecommunications between persons in different states constitutes interstate commerce."   *State ex rel Utilities Comm. v. Southern Bell Telephone & Telegraph Co.*, 288 N.C. 201, 208, 217 S.E.2d 543, 548 (1975).   As

stated by the North Carolina Court of Appeals in *Petition of Carolina Telephone & Telegraph Co.*, 1 N.C.App. 133, 137, 160 S.E.2d 128, 131 (1968):

> Although all of respondent's facilities are located in North Carolina, in performing the service involved in this proceeding, said facilities connected with those of another company to transmit intelligence between this State and other states and the intelligence transmitted was interstate from its origin to its termination.

*MCI Telecommunications*, 355 N.W.2d at 633 (Burns, J., dissenting).

the access service provided by Qwest is incidental to intrastate telephone services because local telephone service cannot be obtained without being assessed the EUCL charge for the ability to receive interstate telephone calls. We disagree and conclude that the EUCL charge is incidental to *inter*state telephone service. "Incidental" is defined as "[s]ubordinate to something of greater importance; having a minor role." Black's Law Dictionary 777 (8th ed.2004). If not for the interstate call, the charge would not exist.[12] Given the legislature's clear intent to exclude interstate telephone services from Wyoming sales tax, we cannot extend the imposition statute to encompass the EUCL charge.[13]

## CONCLUSION

[¶ 29]   The EUCL charge compensates Qwest for providing interstate long distance access to Wyoming customers. As such, it is not a charge for intrastate telephone services as contemplated by Wyo. Stat. Ann. § 39–15–103(a)(i)(C) and the Department's Rules and Regulations. Because the statute does not clearly, definitely, and unambiguously tax the EUCL charge, we must construe the statute in favor of the taxpayer and find that the access service is not properly taxable. Having reached this result, we need not consider the parties' remaining contentions.

[¶ 30]   Reversed.

---

12. We also note that the access service referenced in the Department's regulation applies to the intrastate local access service of which Qwest already pays state sales tax. Rules, Wyoming Department of Revenue (2000), ch. 2, § 14(gg). We find nothing in this regulation that also permits taxation on the interstate access services Qwest provides.

13. Although we reach the conclusion that Wyo. Stat. Ann. § 39–15–103(a)(i)(C) does not encompass the EUCL charge, this is not to say that the legislature could not impose a tax on the EUCL charge if it so desired. *See, e.g., South Cent. Bell Telephone*, 735 S.W.2d at 231 (stating that while the end user charges are derived entirely from interstate commerce the State may base a tax on that income by a properly-drawn statute). *See also* ALM GL c 64H § 1(d) (LexisNexis Supp. 2005) (stating that the "sale of such services shall be deemed a sale within the common-wealth if the telecommunication is either originated or received at a location in the commonwealth and the services are either paid for in the commonwealth or charged to a service address located in the commonwealth"); SDCL § 10–45–6.1 (West 2004) (imposing a tax on "any telecommunication service that originates or terminates in this state and that is billed or charged to a service address in this state, or that both originates and terminates in this state"); Tenn.Code Ann. § 67–6–102(a)(25)(F)(iii)(a) (LexisNexis 2003) (Imposing a sales tax on "[t]he furnishing, for a consideration, of either intrastate or interstate telecommunication services. Except as otherwise provided in subdivision (a)(25)(F)(iii)(b), only those charges for interstate telecommunication which are originated or received in this state and which are billed or charged to a service address in Tennessee shall be included in the tax base.").